UNITED STATES of America,
Appellant,

v.

Virgil F. KANAN, Donald R. Elbel, George
M. Hill, R. E. Wolfe, Martin Breiten-
bach and James F. Byrne, Appellees.

No. 19395.

United States Court of Appeals
Ninth Circuit.

Feb. 4, 1965.

Beatrice Rosenberg, Jerome M. Feit,
Doris R. Williamson, Dept. of Justice,
Washington, D. C., for appellant.

Edward P. Morgan, Welch, Mott &
Morgan, Washington, D. C., Morris A.

Shenker, St. Louis, Mo., Harry J. Cava-
nagh, John P. Otto, John E. Savoy,
O'Connor, Anderson, Westover, Killings-
worth & Beshears, John J. Flynn, Phoe-
nix, Ariz., for appellees.

Before ORR, BARNES and
KOELSCH, Circuit Judges.

BARNES, Circuit Judge:

This is an appeal by the United States
from an order of the United States Dis-
trict Court for the District of Arizona
entered on September 24, 1963, dismiss-
ing an indictment on the ground that all
the evidence before the grand jury had
been illegally obtained. Appellant as-
serts this court possesses jurisdiction to
entertain this appeal under the Criminal
Appeals Act, 18 U.S.C. § 3731. The rele-
vant portion of that section reads as fol-
lows:

> "An appeal may be taken by and on
> behalf of the United States from the
> district courts to a court of appeals
> in all criminal cases, in the following
> instances: From a decision or judg-
> ment setting aside, or dismissing
> any indictment or information, or
> any count thereof except where a di-
> rect appeal to the Supreme Court of
> the United States is provided by this
> section."

Contrary to what is asserted by appel-
lant, appellees allege that the district
court improperly entered an order dis-
missing the indictment at the behest of
the government; that in so doing, the
district court attempted to provide the
government with an unauthorized appel-
late review of two suppression orders.

This dispute as to the essential nature
and propriety of the district court order
presents a threshold question for our
consideration, i. e., whether or not we
possess jurisdiction to entertain this ap-
peal. If we determine that such jurisdic-
tion does exist, then, and only then, are
we faced with an examination of the
validity of the suppression orders.

The events leading up to the indict-
ment of appellees are undisputed. At a
meeting on June 14, 1959, between the

Attorney General of the State of Arizona and a number of competitors of the Arizona Savings and Loan Association, it was decided that an ex parte order should be obtained appointing a receiver to exercise control over the Association, which was allegedly in perilous financial straits. The Attorney General forthwith obtained the appointment of a receiver on June 15, 1959, completely insulating the Association from the managerial control of the appellee-directors.

Late in 1959, a co-receiver of the Association, Mr. Colby, met with the local United States Attorney to inform him that an examination of the Association's assets and documents had revealed a possible violation of federal law on the part of appellees. Pursuant to this conversation, the United States Attorney initiated an investigation made by the Federal Bureau of Investigation. This investigation resulted in a search and subsequent seizure by the federal government of all corporate and personal records within the Association. All such records were searched and seized without benefit of search warrant, court order or subpoena.

As a result of the federal investigation, a thirty-one count indictment was returned on May 25, 1962, charging each of the appellees with mail fraud and fraud by wire as proscribed by 18 U.S.C. §§ 1341 and 1343. The essence of the charges was that the appellees had improperly diverted funds and had falsely misrepresented the financial condition of the Association to its depositors, shareholders and investors. Appellees subsequently moved to suppress all matter disclosed by the F.B.I. investigation on the ground that appellees' rights under the Fourth Amendment had been violated. This motion resulted in a court order of February 5, 1963, which *denied* the motion with respect to the books and records belonging to the Association on the ground that a receiver had the power to authorize a federal inspection, but granted the motion with respect to Mr. Kanan's personal papers.

On April 11, 1963, in the course of its opinion in Stowell v. Arizona Sav. & Loan Ass'n, 93 Ariz. 310, 380 P.2d 606, the Arizona Supreme Court asserted that the function of the superintendent of banks as a receiver "is wholly ministerial." (93 Ariz. at 311, 380 P.2d 606.) This state court decision related to the same receivership here involved. On the basis of this state court opinion, appellees in the present case filed a motion for reconsideration of the district court's denial of their motion to suppress the information obtained from the Association documents and records on the ground that the receiver had no power, without a court order, to authorize the federal inspection. On August 9, 1963, the district court reversed its order of March 6, 1963, with respect to the Association records and documents, and ruled they, as well as Kanan's personal records, were inadmissible.

On the date set for the trial, September 24, 1963, the government for the first time informed the appellees and the court that it was not prepared to proceed because "all of the evidence upon which the Indictment was based, all of the evidence which was presented to the Grand Jury was evidence which has now been suppressed by the Court's first order suppressing the private papers, or by the last order suppressing the corporate papers." (R.Tr. pp. 2–3.) Thereupon government counsel made the following statement:

"Mr. Dibble: If the Court pleases, the Government feels very strongly that the order of the Court should be subject to review, and should be reviewed, the last order suppressing the evidence, and we urge the Court to preserve the Government's right to appeal by either entering an order based on what I thought was Mr. Shenker's argument, too, that he wanted the Indictment dismissed; but other than that, I would urge the Court to enter an order sponte sua, and dismiss the Indictment so as to preserve the Government's right to appeal." (R.Tr. p. 4.)

Pursuant to this government request, and over defense objection, the court dismissed the indictment, stating:

"[T]he Indictment having been obtained by evidence which I have found to be improperly taken before the Grand Jury, it inheres in the Indictment and the proceedings, and therefore that the Indictment itself should be dismissed." (R.Tr. p. 8.)

The government subsequently filed a motion for reconsideration on October 21, 1963. This motion was denied on March 9, 1964, leading to the filing of a notice of appeal on April 6, 1964 invoking this court's jurisdiction under 18 U.S.C. § 3731.

The threshold jurisdictional question facing us essentially involves this basic conflict: Appellant asserts it has the statutory right to review a dismissal of an indictment under 18 U.S.C. § 3731. Appellees, on the other hand, assert that no such right exists where the dismissal was obtained at the urging of the government and for the admitted purpose of avoiding the prohibition against appeal of non-final orders which suppress evidence. The controversy is thus put in sharp focus by two conflicting policy considerations—*in favor* of appeal from dismissal of indictments (§ 3731); and *against* appeal from suppression orders.

Many courts have been asked to treat this jurisdictional question in factual situations at times quite similar to that of the present case. The results of those cases mark a pinnacle of ambivalence between the two policy considerations. Typifying the irresolute status of the case law is the fact that both parties in the present action rely on this court's *en banc* opinion in United States v. Apex Distrib. Co., 9 Cir., 270 F.2d 747 (1959). That case involved the dismissal of indictments granted because the government refused to comply with certain pretrial discovery orders. The defendants contested the jurisdiction of this court to entertain the government appeals. After exhaustively reviewing the legislative history of § 3731, we granted defendant's motion to dismiss, but, in so doing, used the following italicized language:

"It follows from all that has been said that reading § 3731 in the light of its legislative history, as we are required to do, the Government may appeal thereunder from a decision or judgment, 'setting aside, or dismissing' an indictment only if such decision or judgment is based upon a defect in the indictment or *in the institution of the prosecution.*" Id. at 755. (Emphasis added.)

Appellees in the present case rely upon the result in Apex as conclusive support for the proposition that this court lacks jurisdiction to review the district court dismissal. Appellant, on the other hand, alludes to the language above quoted as indicative of this court's willingness to hear an appeal where the dismissal results from a defect in the "institution of the prosecution," and this is what the government alleges exists in the present case. Further examination of the Apex opinion is thus required in an effort to explore the meaning of the italicized language above.

In reaching the result of nonjurisdiction in Apex, we relied heavily (270 F.2d pp. 756–757) upon the third circuit opinion of United States v. Pack, 247 F.2d 168 (1957), a case whose facts are even more comparable to the present case than are the facts in Apex. In Pack, vital government evidence was suppressed by the district court by a pre-trial order. The defendants thereafter did not move to dismiss the indictment, but rather requested a "speedy" trial. The government, just as in the present case, informed the trial court that the suppression order had "virtually wiped out substantially all the Government's evidence," and the government urged the district court to dismiss the indictment *sua sponte* so that an appeal of the suppression order might be possible. The third circuit found that it was without jurisdiction to entertain the government's appeal, and, in so finding, it relied upon its earlier opinion in United States v. Janitz, 161 F.2d 19, at page 21 (1947), where it had stated:

"We think it is clear from the recital of the facts already set out that the

learned Judge's order of dismissal was not based on any objection brought against the indictment at all. The defendants had made no attack on the indictment. The Government's case failed because it had no testimony to support it. We think this is not the kind of a judgment to which the Criminal Appeals statute is directed."

Relying as they did on their prior opinion in Janitz, the third circuit in Pack proceeded to hold:

"Until the Congress plainly provides that the government may appeal from the dismissal of an indictment irrespective of the reasons motivating such dismissal, appellate courts lack jurisdiction to entertain an appeal such as is here involved." 247 F.2d at 172.

In Apex, we *expressly* stated that we were "in substance" announcing the same ruling as that of the third circuit in Pack, to-wit: that "under § 3731 * * * an order is not appealable by the Government unless it is based upon an objection brought against the indictment." 270 F.2d at 756. It therefore seems plausible and proper to draw the inference that when we used the language in Apex that an appeal was possible only where the dismissal of the indictment was "based upon a defect in the indictment or in the institution of the prosecution," (270 F. 2d at 755), we did not have in mind a "defect" which merely reflected a suppression of vital evidence, as in Pack, or as in the present case.

Had we simply concluded our Apex decision on this note, our task in the present case would be relatively academic; we would conclude that we lack jurisdiction to entertain this appeal. The fact of the matter is, however, that we proceeded to discuss the other line of cases which permitted appeals where the suppressed evidence was so inextricably intertwined with the indictment that it

could be said that the indictment had been obtained illegally. We had little difficulty in distinguishing this line of cases from the facts in Apex, where the indictments were not defective, but rather the government had merely failed to comply with a pretrial discovery order. But we neglected, at the same time, to distinguish this line of cases permitting a government appeal from the fact situation in Pack. In Pack, certainly, the suppression order was inextricably intertwined with the dismissal of the indictment;[1] yet we announced in Apex that we were adhering to the reasoning in Pack. An attempt was made to distinguish Janitz and Pack from this contrary line of cases in the third circuit case of United States v. Wheeler, 256 F.2d 745 (3d Cir.), cert. denied 358 U.S. 873, 79 S.Ct. 111, 3 L.Ed.2d 103 (1958), on the ground that a difference exists between a mere order to suppress which ultimately results in dismissal of an indictment and a ruling that the indictment has been illegally obtained. The court distinguished its earlier holdings in Janitz and Pack in the following manner:

"What we have here, however, is an appeal on behalf of the United States from a quashing and setting aside of an indictment, thought by the dismissing judge to have been illegally obtained. The dismissal was entered explicitly under Rule 12(b) (2), Fed.Rules Crim.Procedure and not solely because of the government's failure or inability to prosecute. Nor was the dismissal, as appellees allege, simply a well-conceived device for putting before this court for review the interlocutory order suppressing the evidence. Consideration by us of whether an indictment is defective if obtained as a result of presentation to the grand jury of evidence unlawfully acquired by the government would not necessarily have also entailed consideration

---

1. For purposes of this opinion, the two suppression orders have been treated in a consolidated manner. Had we treated them separately, the government would

have faced an added burden to show that *each* order was inextricably intertwined with the dismissal of the indictment.

of the different question of whether the evidence involved was subject to a suppression order. And were we to consider both questions, reinstatement of the indictment would not necessarily compel a reversal of the suppression order. Jurisdiction for this appeal, therefore, is conferred by 18 U.S.C. § 3731." 256 F.2d at 749.

From this language of the third circuit in the Wheeler case, we believe that had they been faced with the facts of the present case, where the dismissal was entered because of the government's inability to prosecute, and, concededly, as a device for obtaining appellate review, they would have followed Janitz and Pack and concluded that they were without jurisdiction to entertain the appeal.

We must recognize, of course, that subsequent cases have read Wheeler more expansively, authorizing the exercise of jurisdiction in cases where the suppression order is the basis of the indictment dismissal. The most recent such use of Wheeler was by the second circuit in United States v. Tane, 329 F.2d 848 (1964). That case involved a dismissal of an indictment after evidence had been suppressed on a pre-trial motion because of violations of the Federal Communications Act, 47 U.S.C. § 605. The court relied upon § 3731 as authority to entertain the appeal. It stated:

"It is clear that, standing alone, a pre-trial order suppressing evidence

is not appealable. Di Bella v. United States, 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962); Carroll v. United States, 354 U.S. 394, 77 S. Ct. 1332, 1 L.Ed.2d 1442 (1957). Here the suppression order did not stand alone; it was coupled with the dismissal of the indictment, which was found to be the product of illegal wiretapping. The pre-trial dismissal of an indictment, after the granting of a pre-trial motion to suppress the evidence on which the indictment is based is appealable under 18 U.S.C. § 3731. United States v. Wheeler, 256 F.2d 745, (3 Cir., 1958), cert. den. 358 U.S. 873, 79 S.Ct. 111, 3 L.Ed.2d 103 (1958); * * *; United States v. Ashby, 245 F.2d 684 (5 Cir. 1957). Where, as here, the basis of the dismissal of the indictment is inextricably intertwined with the basis of the suppression order, both orders must be reviewed together." 329 F.2d at 851–852.

The Tane case can be distinguished from the present case on the ground that in the present case it was the government, not the defendant, which initiated the dismissal of the indictment.[2] Whether this additional factor might have altered the decision of the second circuit in Tane is a question we do not feel compelled either to explore or determine. We rather conclude that we are acting consistently with our own opinion in

2. That the defendant moved for dismissal of the indictment in Tane, see 329 F.2d at 849. It is also worthy of note that, in the present case, not only did the defendants not move for dismissal of the indictment, but also two of the appellees, Elbell and Wolfe, as non-officers of the Association, did not even possess standing to join in the motion to suppress. Furthermore, by virtue of the Supreme Court reasoning in Lawn v. United States, 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958) and Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956), had the appellees moved for dismissal of the indictment, their motion probably would have been denied because of the prohibition against "going behind" an indictment

to challenge its validity by reason of the character of the evidence before the grand jury. And, as appellees emphasized in oral argument, beyond a mention of two diaries seen by a witness (later called by appellees) when she testified before the grand jury, neither appellant nor appellees, nor the trial judge can know just what evidence was introduced before the grand jury. We can speculate, as does appellant, that it must have been either that which was later suppressed, or that which sprang from that which was suppressed, but we have no method of accurately determining this point. Hence we cannot say either as a matter of fact or law, that only the suppressed evidence resulted in the indictments.

Apex, and with the third circuit opinions in Janitz, Pack and Wheeler, by holding that 18 U.S.C. § 3731 did not intend to confer jurisdiction on a court of appeals to review a dismissal of an indictment where that dismissal was secured at the insistence of the government, where the government felt unable to proceed to trial because of an insufficiency of evidence, and where the government admittedly sought through an indictment dismissal to obtain review of a district court suppression order.

The Criminal Appeals Act has always been considered subject to strict construction, for appeals by the government in criminal cases "are something unusual, exceptional, not favored." Carroll v. United States, 354 U.S. 394, 77 S.Ct. 1332 (1957). With this principle in mind, we hold that the facts of the present case do not warrant an extension of the government's right to appeal under 18 U.S.C. § 3731.

The motions are therefore granted and the appeal is dismissed for lack of jurisdiction.