**UNITED STATES of America, Appellant,**

v.

**Eugene CRUTCH, a/k/a Charles Jenkins, Appellee.**

**No. 650, Docket 72–1047.**

United States Court of Appeals, Second Circuit.

Argued April 7, 1972.

Decided June 13, 1972.

Howard J. Stechel, Asst. U. S. Atty. (with David G. Trager, Asst. U. S. Atty., E. D. N. Y., on the brief), for appellant.

Robert G. Harley, of Clark & Harley, Jamaica, N. Y., for appellee.

Before CLARK, Associate Justice,[*] LUMBARD, Circuit Judge, and TYLER, District Judge.[**]

---

[*] United States Supreme Court, retired, sitting by designation.

[**] Sitting by designation.

**Mr. Justice CLARK:**

This appeal reflects an infelicitous impasse that arose between the district judge and the assistant U. S. attorney in their respective efforts to dispose of this litigation with dispatch. The two-count indictment filed July 8, 1971, charged the appellee Eugene Crutch, with mail fraud in devising a scheme to induce the Manufacturers Hanover Trust Company of New York to issue him a credit card by means of false representations as to name and other material facts. The indictment did not allege any loss and no loss has been incurred on the issuance of the credit card.

The Government had filed a notice of readiness in the case on July 27, 1971, and counsel was appointed for Crutch who had been released on his own cognizance. Crutch entered a plea of not guilty on September 22, 1971; pre-trial was held and concluded and only handwriting exemplars remained to be furnished. The trial was set for October 26, 1971. Thereafter Crutch agreed to appear on October 18 and give handwriting samples. When he failed to appear, a bench warrant was issued for him and a conference set for October 21, 1971. At that time Crutch and his counsel appeared but the exemplars had not been furnished. When the Government indicated that it would not be able to proceed on the 26th because of this and other reasons, which the prosecutor said he would outline "immediately," the defense counsel stipulated to the signature on the application for the Manufacturers Hanover Trust Company credit card. The prosecutor then requested a brief adjournment or a dismissal on the ground that subsequent to the indictment, the Government had obtained new evidence that indicated that Crutch was operating on a very large scale, having obtained some 15 additional credit cards in similar fashion and had used them to buy merchandise or receive credit in excess of $10,000. The judge in a colloquy with the prosecutor said that he was not going to permit the indictment to be dismissed and that the trial would go forward on the next Tuesday, October 26. The prosecutor then advised the judge that he would not be prepared to proceed on that date. The judge then suggested that the prosecutor come in on the next Monday, October 25, and tell him of the additional evidence and perhaps it could be admitted as evidence in this case to show "the state of mind" of Crutch. Upon being advised by the prosecutor, "I don't believe that we could be prepared," the judge replied: "Then you will lose your case . . . I am so very, very sorry . . . but I have to proceed with these trials when we (sic) are set or we will not be able to dispose of our criminal calendar. You will be set for trial on Tuesday."

On Tuesday the prosecutor moved to dismiss the indictment on the ground that he wished to seek a new indictment. In elaboration he stated that the Government intended to obtain another indictment, place the charges on all of the credit cards in it and avoid two trials. The judge indicated there that if the charges under this indictment were separate from the new charges, the charges would have to be severed. If they were not separate then the other charges would be additional evidence in this indictment and could be considered by him at the time of sentencing, as it "will of course be," since Crutch could receive a maximum of ten years. When the prosecutor stated, "The Government seeks a jury verdict on all acts we believe to be criminal," the judge replied:

> "Why? If I can dispose of this case and it is clear to me this man has been engaging in a long pattern of crime, I would certainly take that into account. You think I am going to substitute a one-day case for a case involving fourteen counts when this matter is set for today? It means I lose this day and I am going to get involved in a fourteen-count trial. For what purpose? I don't see it."

The remaining colloquy need not be detailed, although quite voluminous, as it

has no bearing on our problem. It is sufficient to note that at no time did Crutch or his counsel claim any prejudice would result from a short delay or a dismissal. Nor did the judge *sua sponte* suggest that any prejudice could result.

██ ██ Since the delay here involved is not substantial, a dismissal under Rule 48(b) can only be claimed upon some showing that the defendant has been or will be prejudiced. United States v. Simmons, 338 F.2d 804, 807 (2 Cir. 1964), cert. denied, 380 U.S. 983, 85 S.Ct. 1352, 14 L.Ed.2d 276 (1965). Here no claim of prejudice was made nor is there any finding thereof. We see none on this record that could be successfully asserted. Here the prosecutor sought this short adjournment, the length of which the court could have specified; failing in that the prosecutor was willing to accede to a dismissal without prejudice. While this would have delayed the trial for a short period, it would have saved a second trial. Both judge and prosecutor were working to obtain the same end; however the interests of justice require that the Government have a reasonable time in which to secure a new indictment covering the whole transaction.[1]

To hold otherwise might jeopardize the Government's case. If a conspiracy charge is subsequently brought, which the Government says it intends to do, or if the credit cards involved in the new counts were inextricably related to the credit card of the Manufacturers Hanover Trust Company, double jeopardy might well be present. United States v.

Crosby, 314 F.2d 654, 657 (2 Cir. 1963); United States v. Sabella, 272 F.2d 206, 211–212 (2 Cir. 1959); Marakar v. United States, 370 U.S. 723, 82 S.Ct. 1573, 8 L.Ed.2d 803 (1962). Moreover if the charges are splintered, the Government would be accused of harassment that would prejudice it before the jury. See Sanchez v. United States, 341 F.2d 225, 228–229 (9 Cir. 1965), cert. denied 382 U.S. 856, 86 S.Ct. 109, 15 L.Ed.2d 94 (1965). Furthermore, if there was an acquittal at the first trial, the Government evidence regarding the subject matter of the original indictment must be excluded even though relevant on intent. Indeed, this problem may be present here on account of the dismissal with prejudice, unless the same is vacated. As to the suggestion that the Government should have proceeded to trial on the pending indictment and depend on the judge to admit its new evidence to show state of mind, we have serious misgivings. If these are separate offenses they should be presented as such, not as a group in a weak case to prejudice the jury against Crutch.

It is most difficult to predict how a judge will rule on these ticklish evidentiary problems. If he did, in the best of good faith, rule against the Government, it would have no recourse to correct his error. Thus the Government would be placed between Scylla and Charybdis.

The judgment is therefore reversed with directions to grant the Government's motion to dismiss without prejudice under Rule 48(a).

---

1. We note that under the recently promulgated Second Circuit Rules Regarding Prompt Disposition of Criminal Cases the Government had up to six months to ready its case for trial. 28 U.S.C.A. at 42 (1972 Supp.). At the time Judge Weinstein dismissed the indictment only three months and nineteen days had elapsed.