UNITED STATES of America,
Appellant,

v.

Nicholas DiSTEFANO et al., Defendants-
Appellees.

Nos. 828, 829, Dockets 72–1268, 72–1442.

United States Court of Appeals,
Second Circuit.

Argued June 7, 1972.

Decided July 17, 1972.

Lumbard, Circuit Judge, dissented and filed opinion.

See also, D.C., 347 F.Supp. 442.

Walter M. Phillips, Jr., Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty. for the Southern District of New York, Peter F. Rient, and John W. Nields, Jr., Asst. U. S. Attys., of counsel), for appellant.

Gustave H. Newman, Brooklyn, N. Y. (Evseroff, Newman & Sonenshine, Brooklyn, N. Y., of counsel), for appellees DiStefano and Russo.

Maurice Edelbaum, New York City (Nancy Rosner, New York City, of counsel), for appellee Rosner.

Before FRIENDLY, Chief Judge, and LUMBARD and MULLIGAN, Circuit Judges.

FRIENDLY, Chief Judge:

The indictment here, in the District Court for the Southern District of New York, filed on December 8, 1970, charged Edmund Rosner, an attorney, and three other defendants, with the serious crime of suborning perjury, 18 U.S.C. § 1622, and conspiracy, 18 U.S.C. § 371, by procuring Pedro Hernandez and three others to testify falsely at a March, 1967 trial in which Hernandez was convicted of violating the federal narcotics laws. The defendants entered not guilty pleas. In March, 1971, a pre-trial conference was held before Judge Metzner to set a trial date. The Government announced readiness for trial in April or May, but counsel for the various defendants, who are among the most active members of the New York City criminal defense bar, pleaded heavy trial engagements through June.[1] Without objection, the judge scheduled the trial for November 1.

In July the Government began efforts to assemble its witnesses. Hernandez, who had testified before the grand jury and had been available in March, could not be located, despite vigorous efforts to that end. On October 27 the Government applied for an adjournment on the ground of the unavailability of Hernan-

dez and another witness, Beltran. Over the objection of defense counsel, the judge adjourned the trial until January 4, 1972, stating that he would dismiss the indictment at that time if the Government was not prepared to go forward; he also issued a material witness warrant for Hernandez' arrest. In the interval the Government found Beltran but not Hernandez. It sought and the judge granted, again over the objection of defense counsel, a further adjournment, to January 24. When on that date the Government sought a further adjournment but was unable to make any representation when Hernandez would be found, the judge dismissed the indictment.

Some two months later, with the statute of limitations having run in the meanwhile, the Government located Hernandez in Mexico City and sought to have him returned as a parole violator. Its motion of April 18, 1972, that the judge vacate his order dismissing the indictment since the missing witness had been located was denied. The Government had filed a notice of appeal on February 3, 1972 from the January 24, 1972 order of dismissal. On April 21, 1972, after the denial of its motion to vacate, it filed a petition for mandamus to direct the judge to reinstate the indictment. Defendants, while also responding on the merits, have moved to dismiss the appeal for want of jurisdiction.

I.

It is beyond question that if appealability were governed by the statute now

---

[1] We take this occasion to observe that the concentration of business of this sort in the hands of a number of lawyers insufficient to meet the preferences of defendants able to retain counsel cannot be allowed to interfere with the public interest in "disposition of criminal charges with all reasonable dispatch." Statement of the Circuit Council to Accompany Second Circuit Rules Regarding Prompt Disposition of Criminal Cases. Counsel who are booked for months ahead cannot properly accept a retainer without the advance approval of the court. The Sixth Amendment right to counsel does not include the right to a lawyer whose other

engagements prevent a speedy trial. See United States ex rel. Carey v. Rundle, 409 F.2d 1210, 1214–1215 (3 Cir. 1969), cert. denied, 397 U.S. 946, 90 S.Ct. 964, 25 L.Ed.2d 127 (1970); Marxuach v. United States, 398 F.2d 548, 551 (1 Cir.), cert. denied, 393 U.S. 982, 89 S.Ct. 454, 21 L.Ed.2d 443 (1968); United States v. Bentvena, 319 F.2d 916, 936 (2 Cir.), cert. denied [Ormento v. U. S., Di Pietro v. U. S., Fernandez v. U. S., Panico v. U. S., Galante v. U. S., Loicano v. U. S., Mancino v. U. S., Sciremammano v. U. S., Mirra v. U. S.], 375 U.S. 940, 84 S.Ct. 345, 346, 353, 354, 360, 11 L.Ed.2d 271, 272 (1963).

in effect, 18 U.S.C. § 3731, as amended by § 14(a) of the Omnibus Crime Control Act, 84 Stat. 1890 (1970), the order dismissing the indictment would be appealable;[2] indeed, we have recently entertained precisely such an appeal, United States v. Crutch, 461 F.2d 1200 (2 Cir.1972). It is equally beyond question that the present statute does not apply since § 14(b) provides that the 1970 amendments shall not apply to any criminal case begun before their effective date, January 2, 1971, and the instant indictment was filed December 8, 1970. See United States v. Marion, 404 U.S. 307, 311 n. 2, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). We therefore look to the statute effective on the date of the indictment. That too, if read literally, would confer jurisdiction since it authorized an appeal to a court of appeals in criminal cases, *inter alia*:

> From a decision or judgment setting aside, or dismissing any indictment or information, or any count thereof except where a direct appeal to the Supreme Court of the United States is provided by this section.

and, as will be shown in Part II, the exception is not applicable.

However, this is the rare case where we must look not to the presently effective statute or to its father but to its grandfather, the Criminal Appeals Act as it stood before the 1948 amendment, 62 Stat. 844, just quoted. The equivalent provision of the predecessor legislation, the Criminal Appeals Act of 1907, 34 Stat. 1246, as amended in 1942, 56 Stat. 271, read:

> From a decision or judgment quashing, setting aside, or sustaining a demurrer or plea in abatement to any indictment or information, or any count thereof except where a direct appeal to the Supreme Court of the United States is provided by this Act.

Before any court had occasion to pass upon this language, which clearly would not have encompassed the appeal here sought to be taken, the Federal Rules of Criminal Procedure became effective on March 21, 1946. Rule 12(a) abolished all pleas except not guilty, guilty and *nolo contendere*. It also abolished demurrers and motions to quash and provided that "defenses and objections raised before trial which heretofore could have been raised by one or more of them shall be raised only by motion to dismiss or to grant appropriate relief, as provided in these rules," notably Rule 12(b). In addition, the last sentence of Rule 54(c) provided that terms associated with these abolished pleas, motions to quash and demurrers, when appearing in acts of Congress, "shall be construed to mean the motion raising a defense or objection provided in Rule 12." The Advisory Committee Note made clear that this "has particular reference to 18 U.S.C. § 3731 . . . . It is intended that the right of the Government to appeal in such cases should not be affected as the result of the substitution of a motion under Rule 12 for a demurrer, motion to quash and a special plea in bar."

The announced purpose of the 1948 revision of the Criminal Code was "the substitution of plain language for awkward terms, reconciliation of conflicting laws, omission of superseded sections, and consolidation of similar provisions." H.R.Rep.No.304, 80th Cong., 1st Sess. (1947). The changes represented by 18 U.S.C. § 3731 were consistent with that purpose, the Reviser's Notes stating only: "Minor changes were made to conform to rule 12 of the Federal Rules of Criminal Procedure."

■ The first case to consider whether the 1948 amendment should be literally applied, so as to reach a dismissal for lack of prosecution under Rule 48(b), there caused by the grant of a suppression motion, was United States v. Pack, 247 F.2d 168 (3 Cir. 1957). In an able opinion by Judge Kalodner, which took note of the Supreme Court's admonition in Fourco Glass Co. v. Transmirra Products Corp., 353 U.S. 222, 227–228, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957), that

---

2. See 1970 U.S.Code Cong. & Adm.News p. 5848.

courts should not blandly assume, in that instance with respect to the 1948 revision of Title 28, that Congress had intended to make important jurisdictional changes not clearly expressed when it had not been apprised by the Reviser's Notes, the Court held that the section should continue to be read as theretofore, save only for the abolition of outmoded terms.[3] A year later the Ninth Circuit was presented with a similar issue, United States v. Heath, 260 F.2d 623 (9 Cir. 1958),[4] and reached the same result. Sitting in banc, the Ninth Circuit gave further consideration to the problem in United States v. Apex Distributing Co., 270 F.2d 747 (9 Cir. 1959).[5] There was no change in result and no dissent although Judge Pope wrote a wistful concurring opinion, in which Judge Stephens joined, over the passing of the good old days when a statute could be read to mean what it said. Compare Schwegmann Bros. v. Calvert Distillers Corp., 341 U.S. 384, 396, 71 S. Ct. 745, 95 L.Ed. 1035 (1951) (concurring opinion of Mr. Justice Jackson). A later decision in the Ninth Circuit has indicated no disposition to take a new look. United States v. Kanan, 341 F.2d 509 (9 Cir. 1965). The Government has cited no case in any other circuit to the contrary. Although the point was not directly involved in United States v. Sisson, 399 U.S. 267, 90 S.Ct. 2117, 26 L.Ed.2d 608 (1970), the plurality opinion of Mr. Justice Harlan approvingly noted *Apex* and the reasoning as to the limited effect of the 1948 amendment on which it and the other cited decisions were based. 399 U.S. at 292 n. 22, 90 S.Ct. 2117. Beyond this, in 1968 Congress tackled the problem that had given rise to United States

v. Pack, *supra*—the granting of a motion to suppress evidence—by authorizing an appeal on a certificate of need by the United States attorney, 82 Stat. 237,[6] but left the *Pack-Heath-Apex* holdings intact until two years thereafter. Even if we entertained doubt with respect to the Third and Ninth Circuit decisions and felt free to act on this despite the footnote in *Sisson*, it would scarcely be in the interests of sound judicial administration to create a conflict with respect to a complex jurisdictional statute now happily repealed. However, we have none.

## II.

Having given scant attention to the jurisdictional problem in its opening brief, the Government's reply brief advanced the alternative suggestion that we certify the appeal to the Supreme Court under the paragraph of former § 3731 permitting an appeal by the Government to that Court

> From the decision or judgment sustaining a motion in bar, when the defendant has not been put in jeopardy.

Construction of the phrase "a motion in bar" gave rise to much discussion in United States v. Mersky, 361 U.S. 431, 80 S.Ct. 459, 4 L.Ed.2d 423 (1960), although decision ultimately turned on another point. In United States v. Weller, 401 U.S. 254, 259, 91 S.Ct. 602, 606, 28 L.Ed. 2d 26 (1971), Mr. Justice Stewart summarized the state of the law as being:

> First, a "motion in bar" must be taken to mean whatever was meant by a "special plea in bar" in the [Criminal Appeals] Act as originally passed in

---

3. The decision gains added authority from the presence on the panel of Judge Albert Maris, one of the federal judiciary's outstanding experts on jurisdictional questions.

4. In that case the Government's inability to proceed to trial was due to its loss of documents turned over to it by the defendant.

5. The dismissal in *Apex* was because of the Government's refusal to comply with pretrial discovery orders.

6. Congress had previously authorized Government appeals from grants of suppression motions in certain limited classes of cases, see Pub.L. No. 84–728, title II, § 201, 70 Stat. 573 (formerly 18 U.S.C. § 1404), repealed by Pub.L. No. 91–513, title III, § 1101(b) (1) (A), 84 Stat. 1292. See Bova v. United States, 460 F.2d 404, 406 & n. 4 (2 Cir. 1972).

1907. Second, this Court has never settled on a definitive interpretation of what constitutes a "motion in bar."

He added that a characteristic common to the definition at common law "is that a special plea in bar did not deny that a defendant had committed the acts alleged and that the acts were a crime. Rather, it claimed that nevertheless he could not be prosecuted for his crime because of some extraneous factor," 401 U.S. at 260, 91 S.Ct. at 606, typically double jeopardy, pardon, or the statute of limitations.

█ Under this language it seems doubtful whether there could ever be "a special plea in bar" after a defendant had pleaded not guilty and thereafter sought dismissal on the basis of conduct of the Government subsequent to the indictment. This was necessarily the view taken by the decisions of courts of appeals cited in Part I of this opinion, since none found that the appeal was one for the Supreme Court and thus subject to certification. See United States v. Heath, *supra*, 260 F.2d at 629 & nn. 15–17; United States v. Apex Distributing Co., *supra*, 270 F.2d at 750–751 & nn. 5–7. The Supreme Court cases most nearly favorable to the Government are United States v. Marion, *supra*, 404 U.S. at 311–312, 92 S.Ct. 455, which discussed the jurisdictional problem, and United States v. Ewell, 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966), which did not. But neither is sufficiently favorable. Although both concerned challenges under the speedy trial clause of the Sixth Amendment, they involved attacks on the indictment which, if successful, would have prevented prosecution then or later. The claim which the judge sustained here was addressed not to the impossibility of a valid indictment but to "unnecessary delay in bringing a defendant to trial." F.R.Cr.P. 48(b).[7] An added factor here is that the dismissal did not "bar" another prosecution. The statute of limitations had not yet run and there was nothing to prevent a new indictment. United States v. Chase, 372 F.2d 453 (4 Cir.), cert. denied, 387 U.S. 907, 87 S.Ct. 1688, 18 L.Ed.2d 626 (1967); Mann v. United States 113 U.S.App.D.C. 27, 304 F.2d 394, cert. denied, 371 U.S. 896, 83 S.Ct. 194, 9 L.Ed.2d 127 (1962). Cf. United States v. Apex Distributing Co., *supra*, 270 F.2d at 750–751. Although the Government intimates that this might not have been feasible without Hernandez' testimony, this would have been a case where the use of his recorded testimony before the first grand jury would clearly have been permissible under Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956), and United States v. Bennett, 409 F.2d 888, 900–901 (2 Cir.), cert. denied, Haywood v. United States, 396 U.S. 852, 90 S.Ct. 113, 24 L.Ed.2d 101 (1969). Beyond all this it is unlikely in the last degree that Congress intended to burden the Supreme Court with mandatory review of dismissals under F.R.Cr.P. 48 (b), rulings which rest on the circumstances of each case and rarely present an important general issue of law.

### III.

We are unable to agree with our dissenting brother that the case is a proper one for the issuance of mandamus. It is

---

7. The Government urges that the dismissal was not under Rule 48(b) but pursuant to paragraph 4 of this court's Rules Regarding Prompt Disposition of Criminal Cases and that the judge failed to take proper account of paragraph 5(c) excluding from the permitted period of delay a continuance "granted because of the unavailability of evidence material to the government's case, when the prosecuting attorney has exercised due diligence to obtain such evidence and there are reasonable grounds to believe that such evidence will become available within a reasonable period." We see nothing in the colloquy to suggest this. Moreover, we fail to perceive why the matter should stand differently from the standpoint of appellate jurisdiction under the old statute even if the Government were right. The 1970 amendment should alleviate the Government's fears of inability of this court to police the administration by district judges of its new rules in a manner unduly harsh to the prosecution.

undeniable that, under F.R.Cr.P. 48(b), the judge had *power* to dismiss the indictment for "unnecessary delay in bringing a defendant to trial." The claim, which is strongly presented in Judge Lumbard's able dissent and with which we might well agree if the matter were before us on appeal, is rather that the judge was wrong, indeed very wrong, in finding that the delay was "unnecessary." [8] But that is not enough.

█ Will v. United States, 389 U.S. 90, 95, 104, 88 S.Ct. 269, 273, 278, 19 L. Ed.2d 305 (1967), makes plain that mere error, even gross error in a particular case, as distinguished from a calculated and repeated disregard of governing rules, does not suffice to support issuance of the writ. "While the courts have never confined themselves to an arbitrary and technical definition of 'jurisdiction,' it is clear that only exceptional circumstances amounting to a judicial 'usurpation of power' will justify the invocation of this extraordinary remedy . . . Mandamus, it must be remembered, does not 'run the gauntlet of reversible errors.' Bankers Life & Cas. Co. v. Holland, 346 U.S. 379, 382, 74 S.Ct. 145, 147, 98 L.Ed. 106 (1953). Its office is not to 'control the decision of the trial court,' but rather merely to confine the lower court to the sphere of its discretionary power. *Id.*, at 383, 74 S.Ct. 148." While it is possible to find phrases in the *Will* opinion that might afford some basis for distinction, such an effort would ignore the decision's main thrust. Indeed, the principle stated in *Will* was in no way novel. The Court had said long before that the all-writs statute, 28 U.S. C. § 1651(a), cannot "be availed of to correct a mere error in the exercise of conceded judicial power," but can be used only "when a court has no judicial power to do what it purports to do—when its action is not mere error but usurpation of power . . ." De Beers Consolidated Mines, Ltd. v. United States, 325 U.S. 212, 217, 65 S.Ct. 1130, 1133, 89 L.Ed. 1566 (1945).

██ It is always tempting for an appellate court to resort to mandamus when confronted with a decision with which it strongly disagrees but which Congress has given it no power to review. The temptation is particularly strong when the aggrieved party, here the Government, now has no other remedy, even though it had the remedy of reindictment at the time of the action of which it complains. However, as the Chief Justice said in *Will, supra,* 389 U.S. at 97 n. 5, 88 S.Ct. at 274:

> Congress clearly contemplated when it placed drastic limits upon the Government's right of review in criminal cases that it would be completely unable to secure review of some orders having a substantial effect on its ability to secure criminal convictions. This Court cannot and will not grant the Government a right of review which Congress has chosen to withhold.

Congress now has importantly changed its policy with respect to Government appeals in criminal cases. But we must decide this case under the law that governed this indictment.

---

8. As noted in the dissent, the Government asked us after the argument to examine an affidavit dated January 19, 1972 which it had submitted *ex parte* to Judge Metzner and he had sealed. This gave an additional reason which it could not disclose to defense counsel at the time or, allegedly, at the time of the argument for its unwillingness to proceed to trial on January 24. The judge made this available to us, along with a letter stating he "did not consider" the affidavit because of the Government's failure to advise defense counsel of its submission. The Government now seeks to make much of the judge's alleged refusal to "consider" the affidavit. This strikes us as somewhat of a semantic quibble; as we understand it, the judge read the affidavit but thought he could not properly take it into account because of the prosecutor's failure even to notify defense counsel that he had *submitted* a letter for *in camera* inspection—a failure that the Government could readily have cured. Whether the judge was overly punctilious or not, this is not such a departure from the norms of judicial behavior as to warrant the issuance of mandamus.

The appeal is dismissed for lack of jurisdiction; the petition for mandamus is denied.

LUMBARD, Circuit Judge (dissenting):

I dissent. I would grant the petition for writ of mandamus and direct the district court to vacate its order of dismissal and proceed promptly to trial of the indictment. The action of the district court was, in several respects, a gross abuse of discretion. The record shows an extraordinary situation which calls for and, in my view, fully justifies our intervention by mandamus.

As to the appealability of the orders of January 24 and April 18, 1972, I reluctantly agree with Chief Judge Friendly's conclusion that the orders are not appealable. While the views expressed by Judge Pope in his concurring opinion in United States v. Apex Distributing Co., 270 F.2d 747, 757 (9th Cir. 1959) persuade me as to the more sensible view of the meaning of the statute, too much water has since gone over the dam. Thus I turn to consideration of the record and whether the errors of the district court justify our exercise of mandamus.

The indictment, returned December 8, 1970, charged Edmund Rosner, an attorney admitted to practice in the Southern District, and in this court, and three others, with conspiring to suborn and suborning perjury on behalf of Pedro Hernandez at his trial on narcotics charges in the Southern District in 1965 before Judge Tyler. The testimony was that Hernandez was in Miami, Florida at a time when government evidence placed him in New York selling heroin. The jury convicted Hernandez.

Following arraignment of all defendants, at a conference before Judge Metzner, on March 24, 1971, the government stated its readiness to proceed in April or May. When the defense counsel alleged various engagements through the summer, the court set November 1 for trial, apparently because no one claimed any other engagement at that time. Although the government did not object to this, it seems to me that the public interest required a prompt trial of so serious a charge as the suborning of perjury in a federal criminal trial by an attorney continuously practicing in the federal courts. The trial of these charges should have taken precedence over all other engagements of every defense counsel.

Secondly, having granted so long a continuance at the behest of the defense attorneys, I think the government was entitled to more equal treatment than it received when the government represented to the court, first that two important witnesses were missing and later, in January 1972, that Hernandez was still missing.

It is true that in March 1971, when Judge Metzner granted the defense an adjournment of over seven months, our Rules for the Prompt Disposition of Criminal Cases were not yet in effect. Announced on January 5, 1971 they took effect six months later. Thus by November 1971 these Rules were in effect. The Rules emphasize that the paramount interest in the prompt disposition of criminal cases is the public interest. The Rules recognize that numerous eventualities may justify delay beyond the six months readiness requirement. They particularly note in Rule 5(c) (i) that the trial court may grant a continuance at request of the government where evidence is unavailable despite due diligence to make it so, and there is reason to believe that such evidence will be available within a reasonable time. In addition Rule 5(h) provides that continuance may be granted for delay occasioned by "exceptional circumstances."

In my opinion, the government should have been allowed additional time to find Hernandez. In view of the adjournment of more than seven months at the behest of defense counsel, it is difficult to understand by what logic or arithmetic the district court could ration the government to less than three months to find the principal witness. Even though January 24, 1972 had been set as the trial date, the government had clearly made

out a case for further adjournment.[1] Meanwhile the government had actually located the other missing witness.

On so much of the record, I think the government has shown such an exceptional situation that mandamus should issue. But this is not all.

We were advised, after the argument, that the government had filed an affidavit with the district judge, in camera, on January 9, 1972 which set forth specific information regarding recent efforts by some of the defendants to obstruct justice in this case. Judge Metzner thereupon advised us, by letter to the Chief Judge, that he did not consider the affidavit in reaching his decision.

As the grand jury has since filed an indictment, on July 5, 1972, which more specifically details the charges of obstructing justice, there is no longer any reason to keep this affidavit of January 19, 1972 under seal.[2] Sworn to by Assistant United States Attorney Walter M. Phillips, on his own knowledge and on information received from two colleagues, the affidavit referred to an investigation in which a New York City Police Department detective was working in an undercover capacity. It alleged in the third paragraph:

"3. During the course of these investigations, the undercover detective met with two of the defendants in this case, Nicholas DiStefano and Edmund Rosner. During the course of these meetings, Rosner stated that he would be willing to pay a sum of money to obtain copies of written statements and grand jury testimony of Government witnesses who were to testify against him in the present case. An agreement was reached, and copies of these statements and grand jury testimony were given to Rosner, who paid money in return. The meetings between Rosner, DiStefano and the detective were recorded and the government has tape recordings of these meetings."

The affidavit then recited that the investigation was continuing and pointed out the need to avoid public disclosure of the matters reported to the court. It asked adjournment of the trial until June 1972 when it was anticipated that the investigation would have been completed. In his letter to Chief Judge Friendly of June 21, 1972, Judge Metzner stated that "in view of the fact that defense counsel were not advised that an affidavit was to be submitted to me in camera," he had not considered this affidavit in passing on the motion to dismiss. The district judge's excuse is wholly without merit. His duty was to protect the public interest, not to fault the government. The district judge had available several alternatives to protect the rights of the defendants and at the same time to give the January 19 affidavit the consideration to which it was clearly entitled; instead, he chose to ignore the affidavit and to dismiss the indictment.

In March 1972 Hernandez was finally located in Mexico City and in April he was turned over to the F.B.I. The government then moved, on April 18, for reconsideration of the order of dismissal. Judge Metzner promptly denied this motion whereupon the government filed its petition for mandamus.

Undoubtedly the district judge spent considerable time and effort in contacting other judges, state and federal, between November 1971 and January 24, 1972 in an effort to see that all the defense attorneys would be free to start trial on January 24, 1972. No doubt a further adjournment would have been a source of some embarrassment in view of these efforts. But the paramount public interest, because of the nature of the charges and the information presented to the district court in support of

1. Cf. Barker v. Wingo, 407 U.S. 514, 531, 92 S.Ct. 2182, 2192, 32 L.Ed.2d 101 (1972) ("[A] valid reason, such as a missing witness, should serve to justify appropriate delay.").

2. The eight count indictment charges that Rosner, DiStefano, and a third defendant paid the undercover policeman $2,-850 for the government documents, in payments of $400, $100, $1,150, $850 and $350 on October 4, 8, 12, 13, and 19, 1971.

the government's request for more time, made further adjournment imperative.

The writ of mandamus has long been recognized as the means whereby the federal appellate courts may reach out to correct errors in those extraordinary situations where the normal appellate process is not available. It is used sparingly and reluctantly. The party seeking mandamus has "the burden of showing that its right to issuance of the writ is 'clear and indisputable.'" Bankers Life & Cas. Co. v. Holland, 346 U.S. 379, 384, 74 S.Ct. 145, 148, 98 L.Ed. 106 (1953). In the last analysis it depends not on any technical analysis as to whether the error to be corrected involves exercise of a non-existent power or whether it constitutes merely an abuse of discretion; its use depends on the importance the reviewing judges place upon the need for corrective action, and how serious they view the effect of their failure to act.

I can find nothing in Will v. United States, 389 U.S. 90, 88 S.Ct. 269, 19 L. Ed.2d 305 (1967), which bars mandamus in the situation presented here. After Chief Justice Warren had enumerated situations where the writ has issued and where it has not, he wrote "But this Court has never approved the use of the writ to review an interlocutory procedural order in a criminal case which did not have the effect of a dismissal. We need not consider under what circumstances, if any, such a use of mandamus would be appropriate." Here, of course, we are dealing with a dismissal.

Mr. Justice Black wrote a brief concurrence in the *Will* case, the purpose of which was to emphasize that whether the writ should issue depends on the "extraordinary circumstances" of the particular case and not on any set formula or rule. He wrote:

"I agree that mandamus is an extraordinary remedy which should not be issued except in extraordinary circumstances. And I also realize that sometimes the granting of mandamus may bring about the review of a case as would an appeal. Yet this does not deprive a court of its power to issue the writ. Where there are extraordinary circumstances, mandamus may be used to review an interlocutory order which is by no means 'final' and thus appealable under federal statutes. Finality, then, while relevant to the right of appeal, is not determinative of the question when to issue mandamus. Rather than hinging on this abstruse and infinitely uncertain term, the issuance of the writ of mandamus is proper where a court finds exceptional circumstances to support such an order." 389 U.S. at 108, 88 S.Ct. at 280.

In La Buy v. Howes Leather Co., 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957), the Supreme Court upheld the appellate court's issuance of mandamus when the district court had abused its power under Rule 53(b) of the Federal Rules of Civil Procedure. That case clearly points out the propriety of issuing the writ in exceptional circumstances to correct a clear abuse of discretion. The Court said, "We believe that supervisory control of the District Courts by the Courts of Appeals is necessary to proper judicial administration in the federal system. The All Writs Act confers on the Courts of Appeals the discretionary power to issue writs of mandamus in the exceptional circumstances existing here." *Id.* at 259–260, 77 S.Ct. at 315. I believe that the circumstances of the case before us are likewise sufficiently "exceptional" to warrant the issuance of mandamus.

In In re United States, 286 F.2d 556 (1st Cir. 1961), the appellate court issued the writ to vacate an order of acquittal entered by the district court in the middle of the government's presentation of evidence. The court of appeals said that mandamus will lie to correct "usurpation of power" by the district judge, whose actions amounted to "a refusal to permit enforcement of the criminal law," *id.* at 564. The Supreme Court reversed, Fong Foo v. United States, 369 U.S. 141, 82 S.Ct. 671, 7 L.Ed.2d 629 (1962), but solely on double jeopardy grounds, without challenge to the appel-

late court's views as to its power to issue the writ.

This court has not hesitated to use the writ where it has found the exceptional circumstances which it felt required action. In United States v. Dooling, 406 F.2d 192 (2d Cir.), cert. denied sub nom. Persico v. United States, 395 U.S. 911, 89 S.Ct. 1744, 23 L.Ed.2d 224 (1969), we issued the writ when the district judge had dismissed an indictment after the jury had returned a guilty verdict. We said:

> "Certainly the restrictions placed upon the government's right to appeal do reflect important policy judgments by Congress, at their core protecting the right against double jeopardy, which must not be undermined by casual resort to mandamus. But circumstances can arise which present a compelling need for the issuance of mandamus in order to further important countervailing interests. Here we find this need in our responsibility for preventing gross disruption in the administration of criminal justice, and we act pursuant to our supervisory power over the district courts." 406 F.2d at 198.

We also said that we found the action taken by the district judge "so highly improper and undesirable" as to amount to the " 'extraordinary circumstances' which require and justify the exercise of our power to issue the writ," id. at 199. The dismissal of the indictment in that case was "highly deleterious to the sound administration of criminal justice," and we felt accordingly compelled to "make a clear and unequivocal response to the first example of such a dismissal to come before us," id. Judge Metzner's dismissal of the indictment in the circumstances of the instant case is no less striking a disregard for the sound administration of criminal justice, and we should be no less hesitant in the exercise of our supervisory power to correct it. See also Grace Lines, Inc. v. Motley, 439 F.2d 1028, 1031 n. 2 (2d Cir. 1971), where the writ issued and it was said that mandamus will lie to correct a clear abuse of discretion by the district court. In a concurring opinion I noted that mandamus was required since it was "the only way in which the appellate court can correct the egregious error of the district court," id. at 1034 (Lumbard, C. J., concurring). Likewise the error of the district court in the case before us warrants the "vital corrective and didactic function" [3] of the extraordinary writ of mandamus.

The federal appellate courts are charged with the responsibility of supervising the administration of criminal justice in their circuits. Whether they act through the Circuit Council by enacting Rules for the Prompt Disposition of Criminal Cases, or through a panel of the court by passing upon petitions for mandamus, it is a responsibility which they must discharge.

Subornation of perjury poisons the life blood of the administration of justice, doubly so in a criminal prosecution for the sale of heroin. Here one of those charged is a member of the bar. The government's principal witness is found missing. What reason can there possibly be for not allowing the government a reasonable amount of time to find that witness? Here the early march of events has shown how improvident was the impatient refusal of the district judge and his dismissal of the charges. Yet the district judge persisted in his stubborn and unreasonable refusal to allow the government further time. The witness has been found and returned; and two of the defendants are the subject of charges of obstructing justice in the case so hastily dismissed. If ever there were a situation which cried out for the exercise of the writ of mandamus, this is such a case.

I would grant the petition for writ of mandamus, and direct the district court to vacate its order of dismissal and proceed to try this case at the earliest date which can be arranged upon suitable notice, the trial to be consolidated with that of the indictment returned on July 5, 1972, if the government so elects.

3. Will v. United States, supra, 389 U.S. at 107, 88 S.Ct. 269.