**UNITED STATES of America,**
**Appellee,**

v.

**Anthony M. GRIECO, Appellant.**

**Nos. 98, 99, Dockets 25231, 25232.**

United States Court of Appeals
Second Circuit.

Argued Oct. 16, 1958.

Decided Nov. 18, 1958.

John J. Sefferen, New York City, for appellant.

Donald H. Shaw, and Arthur H. Christy, U. S. Atty. for the Southern Dist. of New York, New York City, for the United States, George I. Gordon, Asst. U. S. Atty., New York City, of counsel.

Before HAND, HINCKS and WATERMAN, Circuit Judges.

PER CURIAM.

Grieco appeals from an order of the District Court for the Southern District of New York (Levet, J. presiding), denying a motion for a new trial after conviction under an indictment, charging him in eight counts with embezzlement from the mails and in a ninth count with conspiracy. After judgment upon this indictment he changed his plea of not guilty to a plea of guilty upon another indictment, charging him with making false statements in violation of § 1001, of Title 18 U.S.C., and when he moved for a new trial upon the first indictment he joined with it a motion to restore his former plea of not guilty upon the second indictment. The ground alleged for a new trial upon the first indictment is that five days after the judgment had been entered, one of the jurors, a woman, wrote a letter to Judge Levet in which she declared that she had wished to vote for acquittal, but being the only juror who did, another juror, a man, was "very abusive," so much so that she was "shaking and crying" when she finally agreed to concur with the rest, and that she now wished "to retract." Judge Levet held a hearing at which both parties attended and he examined this juror, the upshot of whose testimony appears in the mar-

gin.[1] Judge Levet, having concluded his examination, refused to allow the defendant's attorney to examine her, and denied the motion for a new trial.

■■ As is well known, it was long the rule that a court would refuse to inquire in any way whatever as to what had occurred during the jury's deliberations. It is true that the rigidity of this doctrine has been relaxed, as appears, for example, in Mattox v. United States, 1892, 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917, where a newspaper article, prejudicial to the accused, was brought into the jury room. As was said in McDonald v. Pless, 1915, 238 U.S. 264, 268–269, 35 S.Ct. 783, 785, 59 L.Ed. 1300, "it would not be safe to lay down any inflexible rule because there might be instances in which" the "testimony of the juror could not be excluded without 'violating the plainest principles of justice.'" And yet in that case the motion was denied, although the amount of the verdict had been the result of averaging the several amounts severally awarded by the jurors.

We do not say that there can be no threats short of violence by one juror against a recalcitrant dissenter that will upset a verdict, but certainly there was nothing in the case at bar to justify such action. So far as appears, it was only the blustering arrogance of her fellow that so agitated the juror that, after she had later had time to reflect, she concluded that she had not voluntarily concurred in the verdict. In Rotondo v. Isthmian Steamship Co., 2 Cir., 1957, 243 F.2d 581, 583, we said that it was "not indeed because the verdict would, or could, survive the facts if they were disclosed; but because the law will not permit a decision to be reopened to which all have assented." Again in Jorgensen v. York Ice Machinery Corp., 2 Cir., 1947, 160 F.2d 432, 435, we said that "it would be impracticable to impose the counsel of absolute perfection that no verdict shall stand, unless every juror has been entirely without bias, and has based his vote only upon evidence he has heard in court." It is not possible to de-

1. "* * * Well, right from the beginning, * * * no matter what I wanted to say, anything about any part of the case, it has nothing to do with the case. He kept shouting and yelling, not in just a loud tone of voice, but a very mean tone of voice. * * *

"* * * He wouldn't let me talk. Everything had nothing to do with the case. As soon as I wanted to say anything, he wouldn't let me talk about that. He just wouldn't let me talk about anything. He yelled that I have no commonsense. He pounded his money on the table, you know, things like that. He was just yelling all through. * * *

"* * * In general he was yelling all the time. My mind—everytime—I couldn't collect my thoughts. He would stop me and I couldn't say what I wanted to say. * * *

"* * * He kept yelling all the time, 'That has nothing to do with the case,' and shouting, and mean, and he got excited. I don't know exactly by the word. He yelled I have no commonsense, when I wanted to bring some points out. He just wouldn't let me talk. * * *

"* * * [W]henever I had a thought to talk about, he just wouldn't let me talk about it. He just yelled. Finally, after about the fifth time * * * a lady said, 'let her talk.'

"* * * And whatever I had in mind at that time, I finished talking about. * * *

"* * * Just that one particular time.

"Q. Didn't you everytime eventually state what you wanted to say? A. No.

"* * * I did not get all those thoughts that I wanted to talk about, no.

"* * * I was very nervous and I was shaking and I was very upset, from the beginning. * * *

"* * * I was in no condition to give that verdict. I didn't even here (sic) what was going on near the end.

"* * * They were talking and I didn't know what they were talking about. * * *

"* * * I was practically in a daze. I don't know what I heard after a while.

"Q. You don't remember what you said? A. I don't even remember what the man was talking about to me when he was sitting next to me. * * *

"* * * I had chills. I was sick. I was upset. I had sickening feelings. * * *

"* * * [M]y heart kept pounding. I just had that pounding feeling and sinking feeling."

termine mental processes of jurors by the strict tests available in an experiment in physics; we have to deal with human beings, whose opinions are inevitably to some extent subject to emotional controls that are beyond any accessible scrutiny.

The appellant's motion to be allowed to withdraw his plea of guilty to the second indictment is too baseless to require discussion.

Orders affirmed.