439 F.2d 1028
 Petition of GRACE LINES, INC., Petitioner, for a Writ of Mandamus or Prohibition
v.
Honorable Constance Baker MOTLEY, Judge of the United States District Court for the Southern District of New York, Respondent.
 No. 473.
 Docket 35581.
 United States Court of Appeals, Second Circuit.
 Submitted November 9, 1970.
 Decided March 1, 1971.
 
 COPYRIGHT MATERIAL OMITTED Henry J. O'Brien, New York City (Kirlin, Campbell & Keating and John J. Lee, New York City, on the brief), for petitioner.
 Leon Stand, New York City (Semel, Patrusky & Buchsbaum, New York City, on the brief), for respondent.
 Before LUMBARD, Chief Judge, and WATERMAN and ANDERSON, Circuit Judges.
 ANDERSON, Circuit Judge:
 
 
 1
 This petition for a writ of mandamus arises out of an incident and accompanying rulings in the trial of Juan Clemente v. Grace Lines, Inc., before Judge Motley and a jury in the United States District Court for the Southern District of New York. The last day of the trial was Thursday, November 5, 1970; the jury had returned a verdict for the defendant and each juror was being polled by the clerk. He addressed Juror No. 11 and said, "you say you find for the defendant Grace Lines, Inc. Is that your verdict?" According to the Reporter's minutes Juror No. 11 replied, "Yes it had to be unanimous." (On November 19th the court recollected that Juror No. 11 actually said at this point, "Yes, only insofar as it had to be unanimous.") The court inquired, "Have you some explanation for your statement Mrs. Rosmarin?" and Juror No. 11 said, "The verdict, as I understand, had to be one hundred per cent in favor and we had to present one statement. I was, I think the only one that held out and there was no possibility of any change and because of that I did."
 
 
 2
 The court then declared a mistrial and assigned the case for retrial on Monday, November 9, 1970, at 9:30 a. m. On Friday, November 6, 1970 defense counsel sought a hearing on its motion to vacate the order for mistrial and to stay the assignment for retrial, and the court advised counsel it would receive and hear such motions before the commencement of the trial at 9:30 November 9th. As defense counsel wanted a reasonable time between arguing his motions and receiving the court's ruling thereon, before again going to trial, he applied to the Court of Appeals for a stay and for a writ of mandamus, seeking reinstatefent of the verdict and judgment for the defendant. A stay was granted pending the disposition of the petition for mandamus.
 
 
 3
 We are satisfied that the trial court's order for the retrial of the case only three and a half days after the declaration of a mistrial, under the circumstances of the case, violated Rule 50(b).
 
 
 4
 In United States v. Smith, 331 U.S. 469, 67 S.Ct. 1330, 91 L.Ed. 1610 (1947), the trial court had denied defendant's Rule 33 motion for a new trial. The Court of Appeals affirmed this denial and certiorari was denied. The trial judge then had a change of heart and sua sponte ordered a new trial. The Government petitioned the Court of Appeals for writs of mandamus and prohibition directing that the order be vacated, and the petition was denied. The Supreme Court reversed, holding that mandamus will lie to effect vacation of an order for a new trial made in violation of the Federal Rules of Criminal Procedure.[1]
 
 
 5
 Rule 50(b) provides that, whenever a motion for directed verdict has been made during the course of the trial and a verdict has not been returned, a party may move for judgment in accordance with his motion for a directed verdict at any time within ten days after the jury has been discharged. On the trial court's assumption that the statement by Juror No. 11 prevented a unanimous verdict and judgment for the defendant the court took the action which precluded the defendant's use of Rule 50(b).
 
 
 6
 The record shows that the defendant made a motion for a directed verdict at the close of all the evidence, and it was therefore entitled to move for judgment in accordance with its motion within ten days after the discharge of the jury. Even if the trial court were correct as to the effect of Juror No. 11's statement, the writ of mandamus must issue to afford the defendant the opportunity denied it.
 
 
 7
 But we hold that the district court was also in error in refusing to enter judgment for the defendant and in declaring a mistrial.[2]
 
 
 8
 The verdict of the jury had been returned in favor of the defendant, and each juror, individually polled, had replied in the affirmative, except that Juror No. 11 added the remarks about the necessity for a unanimous verdict. Her explanation makes it clear that during the jury's deliberations she had taken a contrary view but had won no one over to her position and in the interests of achieving a verdict she had made the vote of the jurors unanimous for the defendant. There was no hint of coercion or improper conduct on her part or on the part of any other member of the jury or anyone else connected with the case. She was animated by a motive, apparently entirely her own, which was not unlawful.
 
 
 9
 Of course, the rule that a juror will not be heard to impeach his own verdict, McDonald v. Pless, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300 (1915), does not preclude the examination of the reasons motivating a juror's vote when that juror, after giving formal assent to the verdict and before judgment on the verdict has been entered, states in open court that he does not agree with the verdict. 6A Moore's Federal Practice ¶59.08[4]. In the present case Juror No. 11 did not state that she disagreed with the verdict and responded to the clerk's query as to whether she found for the defendant, in the affirmative but then went on to explain what had motivated her affirmative vote. The issue thus presented is whether the motivation of the juror was so unlawful or improper as to require the court to nullify her vote and therefore the entire verdict.
 
 
 10
 There are two cases which have presented similar issues to this court, where the motivation or motivations which have produced the verdict have arisen within the mind of a juror or in the minds of several jurors in the course of their deliberations rather than through extraneous influences brought to bear upon them outside of the jury-room.
 
 
 11
 In Jorgensen v. York Ice Machine Corp., 160 F.2d 432 (2 Cir.), cert. denied 332 U.S. 764, 68 S.Ct. 69, 92 L.Ed. 349 (1947), Judge Learned Hand put aside the rule of McDonald v. Pless, supra and inquired into the juror's motivation. There affidavits submitted after the entry of judgment alleged that the jury was deadlocked at seven for the defendant, five for the plaintiff when the foreman learned his son had been killed in action. At this point "someone suggested that, as seven were for the defendant and only five for the plaintiff, they should return a verdict for the defendant. This they did; it was a compromise to avoid further discussion and to let the foreman return home." 160 F.2d at 434. Judge Hand upheld the trial court's denial of plaintiff's motion for a new trial. "[I]t would be impracticable," he wrote, to insist on a rule that every juror "based his vote only upon evidence he has heard in court." Drunkenness, bribery, receiving incompetent documents or privately interviewing a party do require a new trial. But, said Judge Hand, "there are many irregularities which * * * do not, and among them is an agreement to abide by the vote of the majority." "Not only ought we not upset the judge's discretion in refusing to grant a new trial for such reason, but, had he granted the motion * * * we should not have sustained it." 160 F.2d at 435.
 
 
 12
 The present case does not involve an overt agreement by all jurors to abide by the will of a majority. But the decision of one juror to do so would seem even less inconsistent with the unanimous jury principle than the kind of agreement made in Jorgensen.
 
 
 13
 In United States v. Grieco, 261 F.2d 414, 415 (2 Cir. 1958) (per curiam), cert. denied 359 U.S. 907, 79 S.Ct. 582, 3 L.Ed.2d 572 (1959), the litigant's motion for a new trial alleged that five days after entry of judgment on a jury verdict, a woman juror wrote to the trial court and asked to change her vote. This court affirmed the denial of the motion on the rule that a juror will not be heard to impeach his verdict, and cited Rotondo v. Isthmian Steamship Co., 243 F.2d 581 (2 Cir.), cert. denied 355 U.S. 834, 78 S.Ct. 53, 2 L.Ed.2d 45 (1957). It also said,
 
 
 14
 "We do not say that there can be no threats short of violence by one juror against a recalcitrant dissenter that will upset a verdict, but certainly there was nothing in the case at bar to justify such action. So far as appears, it was only the blustering arrogance of her fellow that so agitated the juror that, after she had later had time to reflect, she concluded that she had not voluntarily concurred in the verdict."
 
 
 15
 While it may be argued that Juror No. 11's explanation implied a disagreement with the verdict, there is not sufficient in the record to warrant this conclusion. She expressly joined in the verdict. There is nothing to indicate that she was surrendering a conscientious conviction. It may well be that she was hopeful that the plaintiff would recover something, but when she was unable to persuade any other jurors to agree with her, she accepted as reasonable the finding of the other eleven jurors that, on a fair preponderance of the evidence standard, the plaintiff could not prevail. It appears to us that her behavior was very much in line with the usual additional instructions given when jurors fail to agree and are sent back by the court for further deliberations. See Jury Instructions § 8.19, 27 F.R.D. 102 (1961). We therefore conclude that the district court abused its discretion in declaring a mistrial and ordering a new trial.
 
 
 16
 In such circumstances it is preferable to send the jury back under suitable instructions for further deliberation or to hold a hearing at which the parties may be present but in which the judge alone examines the juror to place on the record the juror's explanation of what motivated her to do what she did. See United States v. Grieco, supra, and the procedure followed by Judge Levet. Whether such an informative hearing is held or the court is dealing with a frugal record, such as that before us in the present case, it is well to bear in mind what this court said in the Grieco case:
 
 
 17
 "It is not possible to determine mental processes of jurors by the strict tests available in an experiment in physics; we have to deal with human beings, whose opinions are inevitably to some extent subject to emotional controls that are beyond any accessible scrutiny." 261 F.2d 415-416.
 
 
 18
 A writ of mandamus will issue directing the district court to revoke the order of a mistrial and the order for a new trial, and it is further directed to reinstate and accept the verdict of the jury and enter judgment thereon in favor of the defendant, subject to the plaintiff's right to appeal and other post verdict, post judgment remedies.
 
 
 
 Notes:
 
 
 [1]
 See La Buy v. Howes Leather Co., 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957); Schlagenhauf v. Holder, 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964)
 
 
 [2]
 The review of an order granting a new trial ordinarily must await the subsequent entry of a final judgment following a new trial. Taylor v. Washington Terminal Co., 133 U.S.App.D.C. 110, 409 F.2d 145, 147 (D.C.Cir.) cert. denied, 396 U.S. 835, 90 S.Ct. 93, 24 L.Ed.2d 85 (1969); Barbarino v. Stanhope S. S. Co. Ltd., 150 F.2d 54 (2d Cir. 1945); 3 W. Barron & A. Holtzoff, Federal Practice and Procedure § 1302.1 at 346. But the purpose of the All Writs Act, 28 U.S.C. § 1651, is to enable federal appellate courts to review by mandamus non-appealable inter-locutory orders which would be the subject of review on appeal from a final judgment. La Buy v. Howes Leather Co.,supra note 1, at 255, 77 S.Ct. 309; 9 J. Moore's Federal Practice ¶ 110.26. This is not to say that supervisory mandamus is intended, or can be used, to authorize the indiscriminate use of prerogative writs as a medium for reviewing interlocutory orders. Mandamus will lie, in the sound discretion of the appellate court, where the trial court has exceeded or wrongfully refused to exercise its judicial power or has committed a clear abuse of discretion. Roche v. Evaporated Milk Assn., 319 U.S. 21, 26, 63 S.Ct. 938, 87 L.Ed. 1185 (1943); Bankers Life & Casualty Co. v. Holland, 346 U.S. 379, 383, 74 S.Ct. 145, 98 L.Ed. 106 (1953). Only in such cases does the desirability of present review outweigh the policies which confine appeals to the review of final orders. See 6A J. Moore, supra at ¶ 59.15 [2].
 
 
 LUMBARD, Chief Judge (concurring):
 
 19
 I concur with the result reached by my Brother Anderson in this case, but I do so chiefly on the following basis.
 
 
 20
 A system which requires the unanimous verdict of a jury of twelve can function satisfactorily in most cases only because most jurors are reasonable men and women, and after a certain amount of discussion has produced a large majority in favor of one view, those in the minority may be willing to join the majority in the belief that if so many other reasonable people have a contrary view, the views of the minority may well be mistaken. Instructions to the jurors in both state and federal courts stress the importance of jurors listening to the views of one another and making allowance for the fact that there can be a reasonable difference of opinion.[1]
 
 
 21
 Moreover, a reasonable juror knows that even though he might prefer to have the jury reach a different result, it is also important that it reach some result. Hence he does not hesitate to reexamine his original views and to give up his opinion if convinced, by the fact that everyone else has contrary views, that his opinion is erroneous. He seeks primarily to agree upon a verdict so long as he can do so without violating his individual judgment and conscience. This commonsense view of getting things decided usually prevails in all groups under circumstances in which there must be a free expression of opinion.
 
 
 22
 Indeed it is certainly a proper reason for concurring with the majority that the doubting juror is the only one of a different view from his eleven fellow jurors, as was the case here. Were the court permitted to examine jurors to elicit whether they had surrendered their views, there would be few verdicts which could withstand such examination. Thus, there is every reason to encourage full and free discussion among jurors and their readiness to give up their views and to yield to the persuasions of their fellow jurors, so long as they do not surrender their honest convictions solely for that reason. Unanimity is possible only if a minority is willing to go along with the majority.
 
 
 23
 In this case there was no basis for the district judge to find that the one juror did not in fact agree at the time the verdict was rendered. The juror never said that it was not her verdict. On the contrary it was implicit in her statement that she gave up her views and that she did in fact ultimately agree so that the verdict would be unanimous. Under our system this was a good and proper reason, and it merits no further cross-examination either by the court or by anyone else.[2]
 
 
 24
 Under the circumstances here, mandamus is required since it is the only way in which the appellate court can correct the egregious error of the district court in setting aside the verdict of the jury and in scheduling a needless retrial.
 
 
 
 Notes:
 
 
 [1]
 The sample instruction on this point recommended for federal courts by the American Bar Association in its Standards Relating to Trial by Jury (1968) at 145, and by the Hon. Edward J. Devitt and Professor Charles B. Blackmar in their book, Federal Jury Practice and Instructions (1970) at 226-7, reads as follows:
 The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree. Your verdict must be unanimous.
 It is your duty, as jurors, to consult with one another, and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. You must each decide the case for yourself, but only after an impartial consideration of the evidence in the case with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views, and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence, solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict.
 The recommended instructions for state courts are similar. See, Instructions (1965) at 75-6; California Jury Instructions: Criminal (ed. Superior Court of Los Angeles County) (1958) at 30; California Jury Instructions: Civil (ed. Superior Court of Los Angeles County) (1956) at 57-9; Illinois Judicial Conference, A Handbook for Jurors in Illinois Civil Cases (1960); A Handbook for Jurors — Connecticut (1957) at 13-14; National Conference of State Trial Judges, The State Trial Judge's Book (1969) at 172-3.
 
 
 [2]
 The A.B.A. Standards Relating to Trial by Jury (1968) states at 162, with respect to polling the jury:
 The poll should be conducted so as to obtain an unequivocal expression from each juror. If this is obtained, then any volunteered statements by the juror in explanation of his verdict may be disregarded. People v. Burnett, 204 Cal.App.2d 453, 22 Cal.Rptr. 320 (1962); State v. Schmelz, 17 N.J. 227, 111 A.2d 50 (1955). The juror is not to be asked to give reasons for his verdict, State v. Brown, 110 Ohio App. 57, 168 N.E.2d 419 (Ohio 1953) * * *.
 
 
 
 25
 WATERMAN, Circuit Judge (concurring to the extent set forth in his separate opinion):
 
 
 26
 No appealable order having been entered below, our power is only that permitted us under the All Writs Act.[1] We are importuned to issue a writ of mandamus to a district judge, a writ we find it wise to issue only rarely. I would order that one be issued here but that it be of narrower scope than the writ my brothers have authorized. My brothers, in exercising the discretion reposed in appellate judges when adjudicating a petition for the issuance of a writ of mandamus, hold that in declaring the mistrial the trial judge so abused her discretion that we should remove any options that might be available to her to reconsider her discretionary act. I think she should be given that opportunity where, as here, the situation below permits of it.
 
 
 27
 I agree with my brothers that the trial defendant, petitioner here, was deprived of its right under Rule 50(b), Fed.R.Civ.P., to move for judgment in accordance with its timely-made trial motion for a directed verdict. Therefore, I agree that petitioner was and is entitled to have ten days within which to make its motion and that the order below requiring the parties to proceed with a new trial within less than ten days exceeded judicial power. I would limit our grant of the writ to reach only this, and would order that the court below grant petitioner ten days after receipt of our mandate to file its Rule 50(b) motion.
 
 
 28
 In view of the fact that the jurors first reported a unanimous verdict clearly indicating that the defendant's motion has merit, and in view of the proceedings had and which I suggest be now had,[2] I believe the issue here will be satisfactorily resolved by a judicial reconsideration below without the unusual substitution of our interlocutory discretion for the exercise of the trial judge's discretion.
 
 
 
 Notes:
 
 
 [1]
 We do also have a general undelineated supervision over the administration of justice within the Circuit
 
 
 [2]
 In the event that the motion is denied the trial judge is cautioned that we have laid down a procedure to be followed when a juror indicates sufficient unsureness to endanger a verdict's validity. See United States v. Grieco, 261 F.2d 414, 415 (2 Cir. 1958) (L. Hand, per curiam), cert. denied, 359 U.S. 907, 78 S.Ct. 53 (1959)