SECURITIES AND EXCHANGE COMMISSION, Petitioner,

v.

Charles E. STEWART, Jr., United States District Judge, Respondent.

Nos. 759, 760, Docket 73–1250, 73–1251.

United States Court of Appeals, Second Circuit.

Argued March 5, 1973.

Decided March 16, 1973.

David Ferber, Solicitor, SEC, Washington, D. C. (Richard E. Nathan, Asst.

Gen. Counsel, Richard L. Jaeger, Spec. Counsel, and William H. Kuehnle, Atty., SEC, Washington, D. C., on the brief), for petitioner.

Arthur L. Liman, New York City (Paul, Weiss, Rifkind, Wharton & Garrison, Jack C. Auspitz, New York City, Leonard H. Becker, Washington, D. C., Warren M. Green, New York City, on the brief), for respondent Vesco.

John S. Martin, Jr., New York City (Martin & Obermaier, New York City, on the brief) for respondent Straub.

Martin Mensch, New York City (Dornbush Mensch, Mandelstam & Schwartz, New York City, Frederic J. Gruder, Yonkers, N. Y., on the brief), for respondents Clay and Beatty.

Neal M. Goldman, New York City (Squadron, Gartenberg, Ellenoff & Plesent, Theodore Ellenoff, New York City on the brief), for respondent Graze.

James P. O'Neill, New York City, (Palmer & Serles, New York City, Raichle, Banning, Weiss & Halpern, Frank G. Raichle, Buffalo, N. Y., on the brief), for defendant Meissner.

Before FEINBERG, MULLIGAN and TIMBERS, Circuit Judges.

FEINBERG, Circuit Judge:

The Securities and Exchange Commission petitions this court for a writ of mandamus directing Charles E. Stewart, Jr., judge of the United States District Court for the Southern District of New York, to vacate an order preventing the Commission from obtaining pre-trial discovery of Robert L. Vesco, Gilbert R. J. Straub, Frank G. Beatty, Richard E. Clay, Stanley Graze and Laurence B. Richardson, Jr., unless the Government grants them immunity pursuant to 18 U.S.C. §§ 6002, 6003.* The order was entered in the course of a proceeding that commenced on November 27, 1972 when the Commission brought a civil complaint against 42 defendants, including the persons named above, charging them with having engaged, and continuing to engage, in acts and practices which constitute a "scheme to defraud" in violation of section 10(b) of the Exchange Act of 1934 and Rule 10b–5 thereunder. The complaint alleges a scheme to transfer investments held by International Controls Corp. in IOS Ltd. and its related companies to shell companies controlled by defendant Vesco and his group. The complaint seeks broad equitable relief, including the appointment of a receiver, return of securities, an injunction and an accounting. The order complained of was entered at the request of the six defendants,[1] over the objection of the Commission, on the ground that since criminal charges were in the offing their fifth amendment rights might otherwise be violated.

At the outset, it must be remembered that the first question before us is not whether Judge Stewart's pre-trial discovery order was a correct exercise of his discretion but whether this situation is an appropriate instance for use of the extraordinary writ of mandamus. While such an issue may seem technical, it is not, for it raises grave questions of the continued strength of the salutary final judgment rule in the federal courts and the propriety of appellate interference with the trial process at an early stage of the proceedings in an obviously massive litigation. From the papers before us, from the representations at oral argument, and from subsequent events of public record of which we are now cognizant, certain facts are now clear. Not surprisingly, the Commission stated in open court that it has no intention of granting use immunity under 18 U.S.C. §§ 6002, 6003 to any of the five defendants now resisting the mandamus peti-

---

* There are actually two petitions for mandamus before us apparently involving two orders of Judge Stewart. For convenience, we refer to one petition and one order.

1. We are told that one of these defendants, Laurence B. Richardson, is now cooperating with the Commission and has himself brought a motion to compel appointment of a receiver for one or more of the corporate defendants.

tion. See note 1 supra. The Commission expressed its belief in the trial court, and reiterated it to us, that it has sufficient evidence of fraudulent activities to present a prima facie case on a motion for a preliminary injunction. While that motion, for reasons which were sufficient for the respective parties, was originally bypassed, it appears that the Commission has now determined to seek preliminary relief, and that proceedings on the preliminary injunction are scheduled to commence before Judge Stewart on March 19, 1973. In addition, counsel for the principal defendant (Vesco) stated to us in open court that his client will not testify unless he is granted immunity and that as to him, the Commission may get the benefit of any inferences to which it therefore might be entitled, should Judge Stewart decide to draw them. Vesco is now apparently out of the country.

Thus, in considering the propriety of mandamus here, the following factors must be noted. While we fully appreciate the grave danger of ongoing violations, to which the Commission and our dissenting brother refer, the Commission is now seeking preliminary relief to correct these and anticipates success without deposition testimony. Should it be unsuccessful, then from any denial of preliminary injunctive relief, the Commission will have an appeal of right under 28 U.S.C. § 1292(a)(1), at which time it could and would undoubtedly challenge the propriety of the order now before us on petition for mandamus. Moreover, that order does not threaten to compel the Commission to grant immunity and jeopardize any future criminal proceedings involving these defendants, since the Commission refuses to do

so. Thus, whatever damage might result if the condition imposed by Judge Stewart were applied in other cases, its only effect in this case is to prevent the depositions of these defendants. Even as to that, it is important to define the precise harm allegedly resulting from Judge Stewart's order. The Commission argues that failure to depose these defendants prior to trial will deprive it of the benefit of negative inferences from defendants' failure to testify on fifth amendment grounds; if Judge Stewart's order were withdrawn, at least Vesco and possibly others would be required to invoke their fifth amendment privilege at any deposition, from which unfavorable inferences might be drawn. But if these defendants fail to testify in their own behalf either at the evidentiary hearing on preliminary relief or at trial, nothing in Judge Stewart's order prevents the judge from drawing any proper inference from that. Under these circumstances, the possible immediate harm to the Government and the precise underlying legal dispute are both narrow indeed. The question is whether Judge Stewart, at the preliminary hearing or at trial, might [2] be barred from drawing the additional adverse inference flowing from invocation by these defendants of a fifth amendment privilege.[3]

On this record, we do not think that a compelling case has been made for the issuance of the extraordinary writ of mandamus to decide such a narrow issue. At the hearing on preliminary relief or at trial, the Commission may suffer no immediate harm at all because its case would be sufficiently strong to justify granting the relief requested. If the Commission fails, it has an immediate right to appeal, as already indicated, which in a proper case can be expedited.

2. We say "might" because Vesco's counsel, as indicated above, appears to have conceded that Vesco should be regarded as though he had specifically invoked the fifth amendment at a deposition.

3. While the Commission argues that the order prevents it from properly preparing for trial, its statement as to the strength of its case at a preliminary hearing undercuts this argument. If the Commission's real concern is that it may be taken by surprise if some or all of these defendants suddenly decide to testify, Judge Stewart can deal with that situation if it arises. Obviously, defendants cannot have relief both ways.

Of course, that an error committed in the trial court will ultimately be reviewable does not absolutely foreclose a petition for mandamus, but access to immediate appellate correction of error, if any, surely counsels against mandamus. See Roche v. Evaporated Milk Association, 319 U.S. 21, 26, 63 S.Ct. 938, 87 L.Ed. 1185 (1943). It is argued that should the Commission prevail in the civil proceedings, the correctness of the order would not be litigated on appeal and would survive as an unfortunate precedent. Neither proposition necessarily follows. If the Commission prevails, one or all of the losing parties would likely prosecute an appeal; we do not believe that this court would ignore the issue of the propriety of Judge Stewart's order in an appeal already properly before it, if the Commission as appellee stressed its significance. Moreover, two judges of this panel have today gone on record as disapproving, on the merits, the action taken by Judge Stewart.[4] But the fact that the order may have been improper does not change our position as to the propriety of granting the writ. Extraordinary writs do not serve the function of merely correcting error, Will v. United States, 389 U.S. 90, 103–104, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967), however tempting that course may be when the order appealed from appears, as it does to our dissenting brother, to be gross error. See United States v. DiStefano, 464 F.2d 845, 850 (2d Cir. 1972).

The arguments raised in dissent do not justify ignoring the clear policy of denying mandamus except in the rarest

situations. In United States v. Kordel, 397 U.S. 1, 9, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970), the Supreme Court alluded to the possibility of a protective order postponing civil discovery until termination of a criminal action, when failure to do so appreciably threatened the fifth amendment rights of a civil litigant. In view of that, it is hard to see how Judge Stewart lacked the *power* to do something less. See also Gordon v. Federal Deposit Insurance Corp., 1238 U.S.App. D.C. 308, 427 F.2d 578, 580 (1970). Nor do we believe that the order raises issues suitable for resolution through "supervisory" mandamus. See generally Note, Supervisory and Advisory Mandamus Under the All Writs Act, 86 Harv. L.Rev. 595 (1973). The competing rights of the Government and of individuals, who are faced with parallel civil and criminal proceedings or the threat of them, hardly raise questions of first impression. See United States v. Kordel, *supra*; Gordon v. Federal Deposit Insurance Corp., *supra*; United States v. Simon, 373 F.2d 649 (2d Cir.), cert. granted sub nom. Simon v. Wharton, 386 U.S. 1030, 87 S.Ct. 1485, 18 L.Ed.2d 591, vacated as moot, 389 U.S. 425, 88 S.Ct. 577, 19 L.Ed.2d 653 (1967). Nor is the problem one which is subject to resolution by general guidelines applicable to an entire class of cases; individualized facts in each case of this sort will generally be dispositive. See Note, *supra*, at 619. Finally, most of the cases cited by the dissent to support mandamus here prove the general rule that use of the writ to review discovery orders should rarely be allowed.[5]

---

4. I do not suggest in the slightest degree that I necessarily disagree, but on my view of the case, we need not reach, and I therefore express no view with regard to, the merits.

5. E. g., in American Express Warehousing, Ltd. v. Transamerica Insurance Co., 380 F.2d 277, 284 (2d Cir. 1967), we stated the general rule and *denied* the writ; in Investment Properties International Ltd. v. IOS, Ltd., 459 F.2d 705 (2d Cir. 1972), the discovery order went to the jurisdiction of the district court to hear the case, hardly the situation here.

The dissent also refers to Financial Services, Inc. v. Ferrandina, 933 F.2d 73 (2d Cir. 1973), where we suggested that, but for the peculiar facts there present, mandamus might have been appropriate. The underlying issue involved, however, was the constitutionality of New York's attachment statute in light of very recent Supreme Court decisions; the problem was subject to complete resolution and was not otherwise reviewable in the usual ways.

In sum, we believe that the observations of Mr. Justice Holmes in Northern Securities Co. v. United States, 193 U.S. 197, 400–401, 24 S.Ct. 436, 468, 48 L.Ed. 679 (1904) (dissenting opinion), should be kept in mind:

> Great cases like hard cases make bad law. For great cases are called great, not by reason of their real importance in shaping the law of the future, but because of some accident of immediate overwhelming interest which appeals to the feelings and distorts the judgment. These immediate interests exercise a kind of hydraulic pressure which makes what previously was clear seem doubtful, and before which even well settled principles of law will bend.

There is no doubt that this is a "big" case, with attendant publicity. But the extraordinary writ of mandamus is reserved for extraordinary situations in which the early intervention of an appellate court is necessary. We conclude that this attempt to obtain review of a pre-trial discovery order is not one of them.

Petition for writ of mandamus denied.

MULLIGAN, Circuit Judge (concurring):

I concur in the opinion of Judge Feinberg holding that the extraordinary remedy of mandamus is not appropriate to review these interlocutory discovery orders. In view of the circumstances set forth in his opinion, I find no compelling reason to make any exception to the sound policy of refusing to review intermediate orders by appeal or by mandamus. There is no reason to review the authority for this which is fully set forth in his opinion.

At the same time I believe that the court below committed error. Rule 26(c), Fed.R.Civ.P. gives a trial court broad authority to protect parties or other witnesses during the pre-trial discovery process. In light of 18 U.S.C. §§ 6001–05, it is clear, however, that such authority does not extend to conditioning all discovery upon a blanket grant of use immunity by the Government pursuant to § 6002. The House Report accompanying the immunity provisions of the Organized Crime Control Act of 1970, expresses the Congressional intent that a witness must specifically claim his privilege to receive immunity. The statute does not contemplate an "immunity bath" H.R.Rep. No. 91–1549, 91st Cong., 2d Sess., in 1970 U.S.Code, Cong. & Ad.News, pp. 4007, 4017.

Moreover § 6003 which sets forth the procedure to be followed in court, explicitly provides that the United States Attorney, with the approval of the Attorney General's office, must request the court to grant immunity. I agree therefore with Judge Timbers that the initiator of the immunity provided by the statute is the Government and not the Court. In my view therefore the orders below are violative of both the spirit and the letter of the Congressional enactment.

TIMBERS, Circuit Judge (dissenting):

If ever there were a case that cries out for mandamus, this is it.

The district court—acting conscientiously and undoubtedly with the best of intentions [1]—nevertheless has committed

---

1. As must be obvious to all, references in this opinion to abuse of discretion and usurpation of power on the part of the district judge are not to be taken as any reflection by the author of this opinion upon the district judge personally. Such terms simply express the judicial standards to be invoked in determining whether the writ of mandamus should issue. My colleagues and I hold Judge Stewart in the highest esteem. The benchmark of a truly competent district judge—as with Judge Stewart in the instant case—is his capacity to insure that the record demonstrates with crystal clarity the basis of his exercise of discretion or assertion of power, so that a reviewing court can determine abuse of discretion or usurpation of power, or the absence thereof.

serious error. Two members of this panel (Judges Mulligan and Timbers) expressly agree that Judge Stewart's orders were egregiously wrong; and the third member of the panel (Judge Feinberg) does "not suggest in the slightest degree that [he] necessarily disagree[s]" with the other two that the orders below were erroneous.

The error committed strikes at the jugular vein of the entire enforcement program, civil and criminal, of the Securities and Exchange Commission. By conditioning the SEC's right to take depositions of defendants in a civil injunction enforcement action upon the grant of use immunity to those defendants in a prospective criminal action, the district court has emasculated a key provision of the Securities Exchange Act of 1934. It has done so by an upside-down application of the use immunity provisions in Title II of the Organized Crime Control Act of 1970—an application that could hardly be further from the remotest intent of Congress.

In the teeth of the erroneous decision below, the SEC is being required—in this case involving charges of a *continuing* fraudulent scheme of *monumental* proportions [2]—to carry out its statutory duties with at least one hand, and perhaps both, tied behind its back. Aside from the impact of such a decision upon the instant case, its terribly damaging precedential effect is bound to cause untold mischief with the Commission's entire enforcement program, not only in other court actions, but in its investigations as well.

And the radiations of this decision will have their impact upon the enforcement programs of every federal agency to which Congress has entrusted similar two-fold civil and criminal enforcement responsibilities.

In short, this is precisely that truly extraordinary case for which the extraordinary remedy of mandamus is reserved. For the reasons more fully stated below, I therefore respectfully but most emphatically dissent from the majority's denial of the petitions for mandamus.

I.

The crux of what the SEC seeks in this civil injunction enforcement proceeding is to take the depositions of the defendants, subject of course to their privilege to refuse to answer specific questions which they reasonably believe will incriminate them or will lead to incriminating evidence. The SEC in essence believes that it is entitled to preserve the two specific, non-exclusive courses of action granted to it by Congress in Section 21(e) of the 1934 Act: [3] (1) to institute a civil injunction enforcement proceeding; *and* (2) if the evidence warrants, to transmit a criminal reference report to the Attorney General leading to possible criminal proceedings. It seeks to require the defendants either to answer deposition questions or to invoke their Fifth Amendment privilege not to do so. If

2. It is charged that the fraudulent scheme involved, among other things, the looting of mutual funds to the extent of some $224 million of United States blue chip securities.

3. Section 21(e) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u(e) (1970), provides:

"Whenever it shall appear to the Commission that any person is engaged or about to engage in any acts or practices which constitute or will constitute a violation of the provisions of this chapter, or of any rule or regulation thereunder, it may in its discretion bring an action in the proper district court of the United States or the United States Courts of any Territory or other place subject to the jurisdiction of the United States, to enjoin such acts or practices, and upon a proper showing a permanent or temporary injunction or restraining order shall be granted without bond. The Commission may transmit such evidence as may be available concerning such acts or practices to the Attorney General, who may, in his discretion, institute the necessary criminal proceedings under this chapter."

Section 20(b) of the Securities Act of 1933, 15 U.S.C. § 77t(b) (1970), is substantially identical.

they invoke the Fifth Amendment, the trier of the facts would be permitted to draw an adverse inference from such silence. If they choose to testify, the evidence obtained would be available for use in the civil proceeding and, additionally, would constitute part of "such evidence as may be available concerning such acts and practices" which would form the basis for a possible criminal reference report. Section 21(e) of the 1934 Act, last sentence.

There is not the slightest question—even in the mind of the district court below—that before enactment of the use immunity statute, 18 U.S.C. §§ 6001–05 (1970), the SEC would have been entitled to precisely what it seeks in the district court, as stated above.

In United States v. Kordel, 397 U.S. 1 (1970), the FDA brought a civil *in rem* action against two products and shortly thereafter announced that a criminal proceeding would be initiated against the corporation and certain corporate employees. When the FDA submitted interrogatories to the corporation, it moved to stay further proceedings in the civil action until after disposition of any criminal proceeding. The district court denied the motion and the interrogatories were answered. No one associated with the corporation asserted his privilege against self-incrimination. Individual defendants who had answered the interrogatories were convicted on the criminal charges. The Supreme Court upheld the convictions essentially on the ground that those individuals who answered the interrogatories could have asserted their Fifth Amendment privilege but failed to do so.

We upheld essentially the same principle in United States v. Simon, 373 F.2d 649 (2 Cir.), cert. granted, 386 U.S. 1030, vacated as moot sub nom. Simon v. Wharton, 389 U.S. 425 (1967). There a trustee in bankruptcy sought to take the depositions of certain persons as witnesses in preparation for a hearing in a bankruptcy proceeding. When an indictment was returned against those witnesses, on the basis of conduct with regard to which the trustee sought to question them, the witnesses moved to enjoin the taking of their depositions until after the criminal trial. They urged that, as accountants, they would lose their professional standing if forced to invoke their Fifth Amendment privilege. We held that the public interest in the speedy progress of the bankruptcy action clearly outweighed the witnesses' interest in withholding their testimony until after the criminal trial without invoking their privilege against self-incrimination. See also United States v. Parrott, 425 F.2d 972, 976 (2 Cir. 1970), cert. denied, 400 U.S. 824 (1970).

In Gellis v. Casey, 338 F.Supp. 651 (S.D.N.Y.1972), the plaintiff moved for a preliminary injunction to enjoin the SEC from proceeding against him in an administrative hearing where he was a defendant, he having been warned that the transactions involved in the administrative proceeding had been called to the attention of the United States Attorney for possible presentation to a grand jury. The court denied the motion principally on the grounds that the plaintiff could invoke his Fifth Amendment privilege and there was no certainty of a criminal prosecution.

While none of these decisions is dispositive of the basic, undecided question raised by the decision of the district court below, they do point strongly toward the correctness of the SEC's position. They establish that a civil proceeding will not be deferred until after a criminal proceeding in order to relieve a person from the decision whether to testify in the civil proceeding or to invoke his Fifth Amendment privilege. Such a person must make a decision; and, as *Kordel* holds, if he chooses to testify, his testimony may be used against him in a subsequent criminal prosecution.[4]

4. The above decisions must be considered in the light of cases such as Malloy v. Hogan, 378 U.S. 1 (1963), and Spevack v. Klein, 385 U.S. 511 (1966). In *Malloy*

It is not disputed that the orders of the district court below are inconsistent with the above decisions and effectively emasculate the SEC's two-prong enforcement duties under a statutory pattern that has been on the books for nearly four decades. By conditioning the SEC's discovery upon the grant of use immunity, the court has presented the SEC with a Hobson's choice. If the SEC decides to forego discovery, it risks losing its case for permanent equitable relief. If it grants use immunity, it most assuredly will be scuttling any prospective criminal proceeding. Use immunity does not preclude the government from bringing a criminal action against the defendants for conduct related to the deposition testimony given in the civil action. But the government would have the burden of proving that the evidence introduced at the criminal trial was not derived from the immunized testimony. Kastigar v. United States, 406 U.S. 441, 456–62 (1972). This burden would be impossible to meet in a complex case such as the instant one, where evidence is being obtained from many different sources.

Of chief significance, however, the court's utilization of the immunity statute to undercut the SEC's statutory powers as they had stood for nearly four decades before the immunity statute was enacted clearly is not supported by the text or purpose of that statute. The use immunity statute [5] was enacted to enable

---

and *Spevack*, the Court held that a person cannot be subjected to severe deprivations (imprisonment for contempt and disbarment, respectively), as a consequence of invoking his Fifth Amendment privilege. These cases indicate that, where a civil proceeding might result in a severe deprivation, it would be improper for the court to draw an adverse inference from the defendant's silence. Indeed, under extreme circumstances the court in a criminal case might rule that the defendant's testimony in a civil proceeding was so essential to his defense that it was "coerced" and thus inadmissible at his criminal trial. See Melson v. Sard, 402 F.2d 653 (D.C.Cir. 1968) (parole revocation proceeding).

Clearly none of these unusual circumstances is present here. The relief sought by the SEC is prophylactic rather than punitive. It does not affect the basic interests of these defendants. No unfair consequences would be visited upon them as a result of their refusal to testify on Fifth Amendment grounds.

5. The relevant sections of the use immunity statute, 18 U.S.C. §§ 6002 and 6003 (1970), provide as follows:

"§ 6002. Immunity generally

Whenever a witness refuses, on the basis of his privilege against self-incrimination, to testify or provide other information in a proceeding before or ancillary to—

(1) a court or grand jury of the United States,

(2) an agency of the United States, or

(3) either House of Congress, a joint committee of the two Houses, or a committee or a subcommittee of either House,

and the person presiding over the proceeding communicates to the witness an order issued under this part, the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order."

"§ 6003. Court and grand jury proceedings

(a) In the case of any individual who has been or may be called to testify or provide other information at any proceeding before or ancillary to a court of the United States or a grand jury of the United States, the United States district court for the judicial district in which the proceeding is or may be held shall issue, in accordance with subsection (b) of this section, upon the request of the United States attorney for such district, an order requiring such individual to give testimony or provide other information which he refuses to give or provide on the basis of his privilege against self-incrimination, such order to become effective as provided in section 6002 of this part.

the government at its option to secure information which it previously would have been unable to obtain because of a witness' Fifth Amendment privilege. It was designed to increase the effectiveness of the government's enforcement powers. The utilization of the statute by the district court below, however, effectively impairs the enforcement powers of the SEC by forcing it to select between two previously nonexclusive enforcement courses. The district court clearly was not empowered to use the statute in this manner.

Additionally, there is no justification for distinguishing between a stay of the SEC proceeding and what the district court has done here. The harmful effect of either type of order on the public interest is equal in magnitude although different in nature. Limiting the SEC to a civil *or* criminal proceeding, when in its judgment it is necessary to bring *both* proceedings, adversely affects the public interest not a whit less than delaying a civil action until the completion of a criminal trial. As the Supreme Court said in United States v. Kordel, *supra*, 397 U.S. at 11, in a different but analogous situation:

> "It would stultify enforcement of federal law to require a governmental agency . . . invariably to choose either to forego recommendation of a criminal prosecution once it seeks civil relief, or to defer civil proceedings pending the ultimate outcome of a criminal trial."

While the issue presented by the decision of the district court below is one of first impression, it is clear that the court committed egregious error.

(b) A United States attorney may, with the approval of the Attorney General, the Deputy Attorney General, or any designated Assistant Attorney General, request an order under subsection (a) of this section when in his judgment—

(1) the testimony or other information from such individual may be necessary to the public interest; and

(2) such individual has refused or is likely to refuse to testify or provide

## II.

My disagreement with the majority centers upon the issue whether this is an appropriate case for issuance of a writ of mandamus. The majority characterizes the district court's action as an "exercise of discretion". It concludes that, even if such discretion were abused, a "compelling case" has not been made for "early intervention" by an appellate court. In my opinion, sufficiently extraordinary circumstances have been shown to justify granting the writ.

The district court clearly acted in excess of its authority in applying the immunity statute for the sole and exclusive benefit of the defendants to enable them to avoid invoking their Fifth Amendment privilege. The immunity statute was designed to be invoked by the government to obtain information privileged under the Fifth Amendment.[6] It was not contemplated that defendants would be able to use it as a sword against the government. Here the "usurpation of power" by the district court was sufficiently extraordinary and compelling of itself to call for issuance of the writ. See De Beers Consolidated Mines, Ltd. v. United States, 325 U.S. 212 (1945).

There are additional substantial reasons why review of the district court's orders should not be postponed. First, whether the government's civil discovery can be conditioned upon a grant of use immunity where parallel civil and criminal proceedings are anticipated is an issue of first impression and of such exceptional importance that we should undertake review immediately under our supervisory mandamus power. See La-

other information on the basis of his privilege against self-incrimination."

6. See S.Rep.No. 91–617, 91st Cong., 1st Sess. 55 (1969) ; H.R.Rep.No. 91–1549, 91st Cong., 2d Sess. 32 (1970), the latter quoted in 2 U.S.Code, Cong. & Ad.News 4007, 4008 (1970). See also Kastigar v. United States, 406 U.S. 441, 443–48 (1972) ("[I]mmunity statutes [are] essential to the effective enforcement of various criminal statutes". *Id.* at 447).

Buy v. Howes Leather Co., 352 U.S. 249 (1957); Schlagenhauf v. Holder, 379 U.S. 104 (1964).[7] See generally Note, Supervisory and Advisory Mandamus Under the All Writs Act, 86 Harv.L.Rev. 595 (1973). The district court's application of the immunity statute in the instant case cuts to the core of many government enforcement schemes since it may seriously impair the ability of agencies to bring both civil and criminal proceedings. The SEC is not the only agency concerned. The Antitrust Division of the Department of Justice, for example, is empowered to bring both civil and criminal proceedings under the antitrust laws on the basis of the same conduct. For its authority to institute civil proceedings, see, e. g., 18 U.S.C. §§ 4, 9 (1970), authorizing United States attorneys to institute proceedings in equity to prevent violations of the antitrust laws. This issue certainly is as important as the issues that have prompted other courts to issue the writ pursuant to the supervisory mandamus doctrine. See United States v. United States District Court, 444 F.2d 651 (6 Cir. 1971), aff'd, 407 U.S. 297 (1972) (question whether Department of Justice's "national security" wiretapping at issue was constitutional); In re Ellsberg, 446 F.2d 954 (1 Cir. 1971) (question whether defendant had standing in a removal proceeding to force the government to reveal whether grand jury indictment had been based on illegal wiretap evidence); United States v. Hughes, 413 F.2d 1244 (5 Cir. 1969), vacated as moot sub nom. United States v. Gifford-Hill-American, Inc., 397 U.S. 93 (1970) (question whether new Rule 16 of the Federal Rules of Criminal Procedure authorized defendant's discovery of statements made to a grand jury).

As far as I know, this is the first case in which the important issue raised by the district court's decision has arisen. In my view, a matter of first impression which is as important as this is should receive the immediate attention of this Court. See Investment Properties International, Ltd. v. IOS, Ltd., 459 F.2d 705, 707–08 (2 Cir. 1972). If we do not rule on the issue now, we may lose the opportunity to do so until after the district courts have had to rule on the issue numerous times without our guidance. If the SEC wins in the present civil proceeding, there will be no occasion for it to appeal. Since the district court's ruling was incorrect, and since the issue is of extraordinary significance, it strikes me as especially inadvisable for us to pass up this opportunity to rule on the issue.[8]

---

7. The supervisory mandamus doctrine apparently originated with the following language in *LaBuy*: "We believe that supervisory control of the District Courts is necessary to proper judicial administration in the federal system." 352 U.S. at 259–60. The doctrine was reinforced by the decision in *Schlagenhauf* where the Court upheld the power of courts of appeal to review by mandamus a "basic, undecided question," and "to settle new and important problems." 379 U.S. at 110–11.

Professors Moore and Ward have interpreted these decisions to mean that courts of appeal "may review immediately questions of unusual importance the determination of which are necessary to orderly, even and efficient administration." 9 Moore's Federal Practice ¶ 110.28, at 312–13, and authorities cited at n. 58 (2d ed. 1972).

8. We have recognized that, in precisely such areas as discovery, supervisory mandamus would be expected to have its greatest value:

"When a discovery question is of extraordinary significance or there is extreme need for reversal of the district court's mandate before the case goes to judgment, there are escape hatches from the finality rule: . . . an extraordinary writ." American Express Warehousing, Ltd. v. Transamerica Ins. Co., 380 F.2d 277, 282 (2 Cir. 1967).

For decisions in this Court granting the writ with respect to discovery orders, see Investment Properties International, Ltd. v. IOS, Ltd., *supra*, 459 F.2d at 707–08; Madison-Lewis, Inc. v. MacMahon, 299 F.2d 256 (2 Cir. 1962).

Immediate review of discovery orders by means of mandamus has been granted in other circuits. Pfizer Inc. v. Lord, 456 F.2d 545, 547–48 (8 Cir. 1972); Harper

Second, review on appeal probably would be an inadequate remedy under the circumstances. The SEC has alleged a continuing fraud of immense proportions. The district court granted a temporary restraining order which provided some relief but not all that the SEC had requested as necessary to prevent continuing injury pending trial.[9] Hearings on the SEC's motion for a preliminary injunction and other relief are scheduled to begin on March 19, 1973. As the majority here states, the SEC may be successful on its preliminary injunction motion despite the district court's shackling discovery order. On the other hand, the SEC may lose because of the absence of inferences adverse to defendants. Such a loss also might well be attributable to the fact that the SEC was not given the opportunity to adduce unprivileged testimony from defendants. No one has claimed that all the defendants would invoke their Fifth Amendment privilege with regard to all the SEC's questions. And while it cannot be said to a certainty that the SEC will lose its preliminary injunction motion because of the district court's order, the magnitude of the potential harm from such a loss emphasizes its importance. Under these circumstances, we should not expose the SEC to the risk of having to go through more than one proceeding to obtain effective relief. The situation clearly calls for early intervention by our Court. Cf.

& Row Publishers, Inc. v. Decker, 423 F.2d 487, 492 (7 Cir. 1970), aff'd mem. by an equally divided court, 400 U.S. 348 (1971); Texaco, Inc. v. Borda, 383 F.2d 607, 608 (3 Cir. 1967); United States v. Hemphill, 369 F.2d 539, 543 (4 Cir. 1966); Continental Oil Co. v. United States, 330 F.2d 347, 349 (9 Cir. 1964); Hartley Pen Co. v. United States District Court, 287 F.2d 324, 328–30 (9 Cir. 1961).

9. The SEC sought preliminary relief against further violations of the antifraud, reporting, and proxy provisions of the 1933 and 1934 Acts, an order that certain false and misleading reports be corrected, and the appointment of receivers. It also sought a temporary restraining order restricting the transfer of cash

Harper & Row Publishers, Inc. v. Decker, 423 F.2d 487, 492 (7 Cir. 1970), aff'd mem. by an equally divided court, 400 U.S. 348 (1971); United States v. Hemphill, 369 F.2d 539, 543 (4 Cir. 1966).

I agree with the majority's view regarding the wisdom of the final judgment rule. Nevertheless, if inexorably applied, the final judgment rule at times may work an injustice. We have recognized that certain unusual and compelling cases call for immediate review by mandamus despite the lack of a final judgment. See, e. g., United States v. Lasker, —— F.2d —— (2 Cir. 1973); Hilbert v. Dooling, 476 F.2d 355, 362 (2 Cir. 1973), (March 12, 1973); Grace Lines, Inc. v. Motley, 439 F.2d 1028, 1031 n. 2 (2 Cir. 1971); United States v. Dooling, 406 F.2d 192, 198–99 (2 Cir. 1969), cert. denied sub nom. Persico v. United States, 395 U.S. 911 (1969); Miller v. United States, 403 F.2d 77, 80–81 (2 Cir. 1968); United States v. Nebbia, 357 F.2d 303, 305 (2 Cir. 1966); Robine v. Ryan, 310 F.2d 797 (2 Cir. 1962).

Our practice has been to balance the policy underlying the final judgment rule against the claim in an individual case that justice and the effective administration of our courts demands immediate review. Grace Lines, Inc. v. Motley, *supra*, 439 F.2d at 1031 n. 2. Having in mind the effect that post-

or other assets from certain funds. On November 28, the court refused to grant the temporary restraining order. On November 30, the court granted a limited temporary restraining order prohibiting the mutual funds from making any new investment commitments except in prescribed circumstances. This order was extended on December 10 for an additional 10 days. On December 20, the court combined this limited relief, which it continued in effect, with an order for an expedited consolidated trial on preliminary and permanent relief. Subsequently, the court amended its order because of "changed circumstances" and directed that the motion for a preliminary injunction be heard separately, in advance of trial, beginning March 19.

poned review may have here on those investors the SEC seeks to protect, and considering the adverse impact the district court's order will have on the effectiveness of all government enforcement agencies—including the SEC—sound administration of justice seems to me to require that the final judgment rule yield in this extraordinary case to the extraordinary remedy of mandamus. Distinguished commentators recently have observed that "[r]eview by mandamus should indeed be restricted to the exceptional, unusual case, but such cases do arise, and the courts should be alert to respond to them." 9 Moore's Federal Practice ¶ 110.26, at 286 (2d ed. 1972).[10] The instant case certainly is an "exceptional, unusual case" and the majority has failed to be "alert to respond".

Finally, we cannot ignore developments in the district court in this case since the argument before us on the mandamus petitions on March 5, of which we take judicial notice. Nor can we blind ourselves to reports in the public press, see, e. g., *New York Times*, March 11, 1973, § 4, at 3, col. 6, relating to the SEC's investigation of this very case. The overtones of such reports, if the charges are proven, strike at the very foundations of government. And specifically they reflect the commendable swiftness with which the SEC reported to the Department of Justice an obvious attempt to interfere with the Commission's investigation of this case. This serves further to confirm the extraordinary character of this case.

I would issue the extraordinary writ of mandamus in this truly extraordinary case forthwith. By so doing we would demonstrate that this Court is not powerless to cut the shackles which have

been clamped upon the SEC and permit it to proceed without further impairment to discharge the awesome responsibilities entrusted to it by Congress.

---

10. Professors Moore and Ward also have observed that "[w]ith respect to the demands of justice made by individual cases, it seems clear that discretionary review by mandamus is to be preferred to enlarging by judicial interpretation the categories of interlocutory orders that are appealable of right." 9 Moore's Federal Practice ¶ 110.26, at 286 (2d ed. 1972), quoted in Financial Services, Inc. v. Ferrandina, 474 F.2d 743, 746 n. 7 (2 Cir. 1973).