UNITED STATES of America,
Appellant,

v.

Tarik Ali BEY a/k/a Warren L. Williams, Appellee.

No. 73-1785.

United States Court of Appeals,
Third Circuit.

Argued April 1, 1974.

Decided June 14, 1974.

Richard L. Thornburgh, U. S. Atty., James A. Villanova, Kathleen K. Curtin, Samuel J. Orr, III, Asst. U. S. Attys., Pittsburgh, Pa., for appellant.

Herbert Bennett Conner, John Edward Wall, Dickie, McCamey & Chilcote, Pittsburgh, Pa., for appellee.

Before VAN DUSEN, WEIS and GARTH, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge.

■ This is an appeal by the government [1] from the District Court's dismissal of an indictment charging violation of 18 U.S.C. §§ 922(h) and 924(a).[2] The District Court, in dismissing the indictment by its December 4, 1973 order, incorporated therein the provisions of its prior order of August 16, 1973.[3] The grounds for the Court's dismissal, therefore, can be summarized as: (1) ineffective assistance of counsel, (2) a denial of a speedy trial, and (3) irreparable prejudice "in [defendant's] opportunities, for concurrent sentence, access to certain rehabilitation opportunities, and in various other ways." As a consequence, the District Court held that the defendant had been denied both procedural and substantive due process.

1. The government's right to appeal is governed by 18 U.S.C. § 3731, as amended by § 14(a) of the Omnibus Crime Control Act, 84 Stat. 1890 (1970). Under that section orders dismissing indictments are appealable. United States v. Crutch, 461 F.2d 1200 (2d Cir. 1972) ; United States v. DiStefano, 464 F.2d 845, 847 (2d Cir. 1972) ; see also 1970 U.S.Code Cong. & Admin.News p. 5848. Since the instant indictment (71–63) was filed after the effective date of the 1970 amendments, an appeal properly lies to this Court.

2. 18 U.S.C. § 922(h) provides :
(h) It shall be unlawful for any person—
(1) who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year ;
(2) who is a fugitive from justice ;
(3) who is an unlawful user of or addicted to marihuana or any depressant or stimulant drug (as defined in section 201(v) of the Federal Food, Drug, and Cosmetic Act) or narcotic drug (as defined in section 4731(a) of the Internal Revenue Code of 1954) ; or
(4) who has been adjudicated as a mental defective or who has been committed to any mental institution ;
to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 924(a) provides :
(a) Whoever violates any provision of this chapter or knowingly makes any false statement or representation with respect to the information required by the provisions of this chapter to be kept in the records of a person licensed under this chapter, or in applying for any license or exemption or relief from disability under the provisions of this chapter, shall be fined not more than $5,000, or imprisoned not more than five years, or both, and shall become eligible for parole as the Board of Parole shall determine.

3. Subsequent to the August 16, 1973 order of dismissal, the government moved before the District Court for reconsideration of its order. A protective appeal and motion for remand to the District Court were filed on August 27, 1973. On October 12, 1973, this Court granted appellant's motion for remand but retained jurisdiction. The District Court, upon reconsideration of its August 16, 1973 order, reaffirmed its earlier decision by order dated December 4, 1973. There is appropriate appellate jurisdiction by virtue of the appeal taken from the August 16, 1973 order over which we retained jurisdiction. Although this is the second time that this matter has been presented to us, this is the first occasion that we address ourselves to the merits of the controversy.

## I.

Tarik Ali Bey was originally indicted on March 7, 1968, (Criminal No. 68–54) for a violation of 15 U.S.C. § 902(f)[4] and charged with being a convicted felon who caused a firearm to be transported in interstate commerce. The violation was alleged to have occurred on July 3, 1967.

On March 25, 1971, Bey was re-indicted. A superseding indictment was filed charging him, a convicted felon, with wilfully and knowingly receiving a firearm which had been shipped and transported in interstate commerce in violation of 18 U.S.C. §§ 922(h) and 924(a), (formerly 15 U.S.C. §§ 902(f) and 905(a)).[5]

Until July 1972, Bey's whereabouts were apparently unknown.[6] In July 1972, however, Bey was arrested by state authorities and was incarcerated in Allegheny County Jail. While in state custody, he was placed under federal detainer. On August 28, 1972, attorney Lawrence Zurawsky[7] was appointed as his counsel to represent him in the instant proceeding. Within weeks thereafter, pretrial motions, captioned in indictment No. 71–63, were filed including motions for dismissal of the indictment, discovery, bill of particulars, suppression of evidence, speedy trial, pretrial conference and mental examination.

On October 5, 1972, the Court granted *defendant's* motion for a "general continuation of time" in connection with the filing of his briefs supporting all the pretrial motions and appointed Dr. Henninger, a psychiatrist, to examine the defendant. On August 1, 1973, all pretrial motions were heard by the Court. It was at that hearing, that for the first time, Zurawsky claimed he had received the wrong indictment, referring to the superseded indictment No. 68–54. The August 16, 1973 order dismissing the indictment No. 71–63 followed. (*See* fn. 3, *supra*).

Neither the record nor the fragments of testimony taken at the August 1, 1973 argument support defendant Bey's position or the Court's findings and conclusions. We accordingly reverse.

## II.

Bey's argument seeking to sustain the dismissal of No. 71–63 essentially proceeds as follows:

(a) Either at or after arraignment (September 14, 1972) Bey's trial counsel (Zurawsky) received from the "government" a copy of the old (68–54) or "wrong" indictment; and that

(b) Bey was thereby prejudiced by having his counsel (without notice of the superseding indictment or its substance) prepare "motions and briefs for approximately one year based upon a superseded indictment".[8]

(c) Further, says Bey, because of his attorney's extensive work dealing with the superseded indictment, he,

4. 15 U.S.C. § 902(f) provided:
(f) It shall be unlawful for any person who has been convicted of a crime punishable by imprisonment for a term exceeding one year or is a fugitive [sic] from justice to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce, and the possession of a firearm or ammunition by any such person shall be presumptive evidence that such firearm or ammunition was shipped or transported or received, as the case may be, by such person in violation of this chapter.

5. 15 U.S.C. §§ 902(f) and 905(a) were repealed by Pub.L. 90–351, June 19, 1968, and these prohibitions are covered by new sections 18 U.S.C. §§ 922(h) and 924(a).

The record does not reveal the exact reason for Bey's re-indictment. As noted, the 1968 indictment charged Bey with "causing to be transported a firearm in violation of 15 U.S.C. § 902(f)." However, the proscription against "causing to be transported" is in 15 U.S.C. § 902(e). It is 15 U.S.C. § 902(f) which proscribes "receiving". Hence, we assume that Bey would have had to be re-indicted even had there been no recodification.

6. It was stated without contradiction at the August 1, 1973 hearing that until that time, Bey had been a fugitive.

7. Zurawsky does not represent Bey on this appeal.

8. Appellee's brief page 8.

Bey, was not brought to trial within a reasonable time.

To evaluate these contentions, we look to the events and their chronology, as they are revealed by the record.

1. As previously noted, the defendant was placed under federal detainer some time in late July or early August 1972 while awaiting trial on State charges.

2. On August 28, 1972, Zurawsky was appointed as his counsel to represent him in proceedings under the instant indictment. Form CJA 20 ("Appointment and Authority to Pay Defense Counsel") described Bey's offense as "possession of a firearm after conviction 18 U.S.C. §§ 922(h) and 924(a)". That form, as well as the local form for notice of appointment of counsel, bore the criminal docket number of the instant indictment. The local form was mailed to the defendant; the CJA 20 form was mailed to Zurawsky.

3. The notice of arraignment bearing the superseding indictment number was mailed by certified mail to Bey at his prison address and to Zurawsky at his office address in Pittsburgh, Pennsylvania.

4. Thereafter, Bey was arraigned on September 14, 1972. The transcript of the arraignment reveals the following:

"MAGISTRATE SENSENICH:

This is the arraignment for Tarik Ali Bey, a/k/a Warren L. Williams, who has been indicted at Criminal No. 71–63 for a violation of 18 United States Code, Sections 922(h) and 924(a). The defendant is present in Court and is represented by his attorney, Mr. Zurawsky, and the government is represented by Mr. Stanton. Mr. Stanton, you may proceed, and I'll ask the parties to approach the bench. Would you approach the bench, please.

MR. STANTON:

You are Tarik Ali Bey, a/k/a Warren Williams? And, have you or your counsel received a copy of the indictment returned against you charging you with one count—that on or about July 3, 1967, at Braddock, you having

previously been convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly and wilfully receive a firearm, a .22 Caliber Revolver which had been shipped in interstate commerce from Denver, Colorado, to Braddock. You know what you're charged with?

TARIK ALI BEY:

I don't understand the terms knowingly and wilfully. Does that mean that I knew that I was breaking the law when I sent for the gun?

MR. STANTON:

That's right, yes.

TARIK ALI BEY:

Well, that's that's incorrect. I did not.

MR. ZURAWSKY:

But, you do understand, Mr. Bey, that the term knowingly means that you did it with knowledge and you did it with intent to break the law wilfully. Whether or not you did it doesn't (inaudible).

TARIK ALI BEY:

I understand what the term means.

MR. ZURAWSKY:

OK

MR. STANTON:

So, to this charge then, this count, to this indictment, how do you wish to plead, guilty or not guilty?

TARIK ALI BEY:

Not Guilty.

MR. ZURAWSKI:

Ila Jeanne Sensenich, I apparently didn't receive a copy of the indictment although I saw it previous to this hearing. *Mr. Bey had a copy.* Do you have an extra one for indigent counsel? (emphasis supplied)

MR. STANTON:

.I can give it to him."

5. On the reverse side of the original of the indictment 71–63, the defendant Bey's signature appears in the section reserved for his plea. Bey's signature, signifying his "not guilty" plea is writ-

ten in Arabic. Beneath the script signature the defendant's name Tarik Ali Bey is subscribed. Zurawsky's signature appears next to that of the defendant's.

6. On the defendant's behalf, Zurawski in the latter part of September 1972 filed a group of motions all captioned under Criminal No. 71–63 (the superseding indictment number). With but a minor exception,[9] the motions filed sought relief and information equally applicable and relevant to both the superseded and the superseding indictments. One of the motions sought a pretrial conference at least ten days prior to trial so that defense counsel could discuss with the Court and the Government the legal and factual issues otherwise "defendant will be deprived of effective assistance of counsel and adequate opportunity to prepare his defense."

7. The defendant's motion for a mental examination was filed in October 1972, some few weeks after the filing of his motion for speedy trial. At the same time, and in the same document, Bey asked for a general continuance of time to file his briefs in connection with the pretrial motions.

8. On October 5, 1972 the Court granted Bey's motion for a general continuance "until further order of the Court."

9. Between that time and the hearing on August 1, 1973 a series of letters were written between Zurawsky and the United States Attorney, and in some instances between Zurawsky and the doctors appointed to examine Bey.[10] That correspondence reveals, among other things, that a Dr: Henninger on October 26, 1972 refused a Court appointment as a psychiatrist. Thereafter, a Dr. Thomas was appointed. On May 25, 1973, Dr.

Thomas wrote to Zurawsky and reported that the defendant had refused to permit Dr. Thomas to examine him on two separate occasions. Dr. Thomas sought Zurawsky's intervention. The text of Zurawsky's response under date of July 17, 1973 follows:

"Dear Dr. Thomas:

May I apologize for the repeated inconveniences caused you in our mutual efforts to assist Mr. Bey. Apparently his earlier ambivalence concerning his desire for further psychiatric evaluation has lately evolved to a determination to resist any further medical or psychiatric treatment or study.

Judge Dumbauld has scheduled a pre-trial hearing for August 2, 1973, at which time we will probably dispose of the several pending pre-trial motions and of the problem of the proper mode of evaluating Mr. Bey's legal competence.

Whatever course of action is decided upon at the pre-trial conference, I shall write you promptly either requesting your further professional services, if available, or requesting that you submit your bill for services rendered to date.

May I express my appreciation for your efforts to date in this case, which unfortunately has proved difficult beyond our initial expectations.

Yours very truly,
Lawrence G. Zurawsky"

10. On July 19, 1973, two days after Zurawsky had written to Dr. Thomas asking him to withhold further action until the Court had resolved "the problem of the proper mode of evaluating Mr. Bey's legal competence" a supple-

---

9. The motion to dismiss the indictment referred to the "subject criminal statute 15 U.S.C. § 902(f) as being unconstitutional *per se.*" The substance of 15 U.S.C. § 902(f) is substantially the same as 18 U.S.C. § 922(h). Without stating the reasons therefor, the appellee in his brief (page 9) claims that despite the similarity of the two

statutes the defendant has nevertheless been prejudiced at this pretrial stage.

10. At oral argument we permitted a supplemental appendix to be filed which included various letters pertaining to the psychiatric examination of the defendant. To this date, no mental examination of the defendant has ever been conducted.

mental motion for discovery captioned again in Criminal No. 71–63 was filed. The discovery sought dealt wholly with matters of "delay" evidently in support of the speedy trial theory.

11. On August 1, 1973 the Court held the hearing on Bey's motions.[11] Despite repeated requests by the government to withhold its ruling on dismissal of the indictment until after the record on arraignment had been transcribed, the Court at page 49 of the hearing transcript stated: "I . . . quash this indictment or rather the prosecution for failure to observe the proper procedural steps, . . ." and reaffirmed that statement by its ruling at page 55 of the same transcript: "I am satisfied that proceeding to trial on a wrong indictment in any event would be a mischarge [sic] and I adhere to my former ruling dismissing the prosecution. Defense counsel may submit a written order to that effect."

12. No witnesses were called at the August 1 hearing, other than the defendant Bey who was called to testify to his "mental state". However, the following colloquy took place between the Assistant United States Attorney and Zurawsky:

"Mr. Villanova: In other words, what you are testifying to, Mr. Zurawsky, is the only indictment you ever saw was a copy of the [superseded] indictment Mr. Wendell Stanton handed to you?

Mr. Zurawsky: Well, let's let Mr. Wendell Stanton rest in peace. The copy of the indictment I got, Mr. Villanova, I believe I was given by the magistrate or maybe it was given to me by a secretary in the United States Attorney's office, but my normal practice when appointed is that I go in and tell the magistrate that I will accept the case and to please give me a copy of the indictment so I can begin to research the case. And if I followed my normal practice, I was given this by some employee of the magistrate.

Mr. Villanova: In other words, Your Honor, what we have here is that Mr. Zurawsky says he has the wrong indictment. He doesn't know who he got it from. The government is accused of wrongdoing. Mr. Zurawsky wouldn't even say that. He wouldn't say that the government is accused of wrongdoing. And Mr. Zurawsky doesn't know how it ended up in the files. And I would even say that Mr. Zurawsky is not convinced in his own mind beyond a reasonable doubt—and you can correct me if I am wrong on this—that he never received a copy of the right indictment." (August 1 Hearing, p. 54).

It was in this posture and on this record that the District Court dismissed the indictment, "finding":

Defendant has been deprived of effective assistance of counsel as a result of the government's providing defense counsel with the wrong indictment, thereby inducing a detrimental reliance upon the part of defense counsel.

Under an indictment alleging an offense on July 3, 1967, defendant was detained in federal custody in August, 1972, with no trial date being set as of August 1, 1973. A not insubstantial portion of that delay could have been avoided by timely action on the part of the government, especially in consideration of defendant's motion

---

11. At this hearing, Bey referring to the pleading of the indictment at arraignment, testified:

"THE WITNESS: All right. This is my problem, Your Honor, because when this was read originally at the preliminary hearing I asked the judge for a definition of willfully and knowingly. And the court at that time told me—well, let me clarify myself. I asked the judge for a definition, and before she could answer, I said, "Would that mean that I knew at the time I was performing the act that in fact it was a violation of the law?" And I asked her if that is what willfully and knowingly meant in translation. And if I am not mistaken, the court agreed that is what it meant. On that basis then I entered a nonguilty plea." (August 1, 1973 Hearing p. 33).

for speedy trial (filed September 21, 1972) and defendant's request for expedition of his mental examine and trial, in light of the pendency of the state prosecution.

At least partly as a result of the above-described delay, defendant was tried and convicted on state charges and began sentence of a term of 5 to 20 years in a state institution, with the subject federal charges still pending. Consequently, defendant has been irreparably prejudiced in his opportunities for concurrent sentence, access to certain rehabilitation opportunities, and in various other ways.

All of the foregoing circumstances are aggravated by the fact that, to date, defendant has been deprived of effective assistance of counsel resulting from the government's failure to provide defense counsel with a true and correct copy of the indictment at issue.

The foregoing circumstances indicate defendant, in the circumstances of this case, has been deprived of his rights to both procedural and substantive due process, and has been irreparably prejudiced thereby.[12]

### III.

Central to the District Court's order is its findings that the "government" provided defense counsel with the wrong indictment. Tested as it must be by the "clearly erroneous" standard,[13] it is evident that this finding cannot stand. Not only does the record fail to reveal

any evidence to support this finding,[14] but the record is similarly barren of all evidence as to the other "findings" made in the August 16, 1973 order.

Additionally, even if an evidential basis existed to support a finding that the Assistant United States Attorney gave a copy of the "old" indictment to Zurawsky,[15] in the absence of any intent to mislead, we would nevertheless be obliged to hold as error the District Court's dismissal of the indictment 71-63.

F.R.Crim.P. 10 requires only that the *defendant* himself be given a copy of the indictment. What little evidence there is in the record reveals that Bey had received a copy of the indictment and additionally had the charges therein explained to him. We have been directed to no authority requiring defense counsel also to be furnished with a copy of the indictment.[16]

■ Even in those instances where the defendant has not been furnished a copy of the indictment and a *post*-trial attack has been mounted,—it has been held that no prejudice warranting vacation of the conviction results if the charges were read and explained to the defendant before the jury was sworn. The test is one of prejudice to the defendant, and there can be no prejudice where, as here: (a) there is evidence that the defendant had received a copy of the indictment; (b) the defendant is represented by counsel; (c) the defendant knows the charges, having had them read and explained to him in open court;

12. Order dated August 16, 1973.

13. United States v. Delerme, 457 F.2d 156 (3d Cir. 1972).

14. What the record does show is (1) Zurawsky was on notice of the correct charges and indictment number from at least August 28, 1972 (the time of his appointment as counsel); that the correct charges were read to, discussed by and acknowledged by Bey and Zurawsky at the September 14, 1972 arraignment. Even if we were to give evidential credit to the statements made at oral argument by Zurawsky (*but see* Thornton v. United States, 493 F.2d 164 at 167 (3d Cir. 1974)), the record is devoid of any "evidence" that Zurawsky did not receive the correct indictment—or from whom he may have received the "wrong" indictment.

15. Bey's brief (p. 3) states: "At the conclusion of the arraignment, Mr. Zurawsky was supplied with a copy of the wrong indictment." Nowhere in the record can support be found for this statement.

16. *Cf.* United States v. Clark, 407 F.2d 1336 (4th Cir. 1969) and United States v. Shepherd, 108 F.Supp. 721 (D.C.N.H.1953) (furnishing defense counsel with a copy of the indictment is equivalent to furnishing the indictment to the defendant himself).

and (d) the defendant acknowledged the charges by signature upon pleading "not guilty". Garland v. Washington, 232 U. S. 642, 34 S.Ct. 456, 58 L.Ed. 772 (1914); United States v. Rogers, 469 F.2d 1317 (5th Cir. 1972); Dell v. State of Louisiana, 468 F.2d 324 (5th Cir. 1972); Silva v. Cox, 351 F.2d 61 (10th Cir. 1965); Richardson v. United States, 217 F.2d 696 (8th Cir. 1954).

Considering all of these circumstances, on the state of the record before us, the District Court's finding cannot be sustained.

### IV.

Bey next argues that he was denied effective assistance of counsel. This argument is predicated on the "fact" that Zurawsky was supplied by the government with a copy of the superseded indictment, and as a result, Zurawsky "worked diligently for approximately one year, relying on the wrong indictment" (appellee's brief p. 7). There is neither factual nor legal support in the record to sustain this argument.

■■ As we have previously noted (III, *supra*), the factual underpinning (i. e., the supplying of Zurawsky with the wrong indictment) is missing. Further, we have been made aware of no instance where *prior to trial* (as here), a prosecution has been dismissed on the grounds of ineffectiveness of counsel.[17] We decline to so hold in the posture of this record.[18]

### V.

■ Finally, Bey argues that he was denied his constitutional right to a speedy trial. The District Court "found" that:

"Under an indictment alleging an offense on July 3, 1967, defendant was detained in federal custody in August, 1972, with no trial date being set as of August 1, 1973. A not insubstantial portion of that delay could have been avoided by timely action on the part of the government, especially in consideration of defendant's motion for speedy trial (filed September 21, 1972) and defendant's request for expedition of his mental examine and trial, in light of the pendency of the state prosecution." (13a)

The District Court also found that Bey had been irreparably prejudiced in his opportunities "for concurrent sentence,[19]

17. The defendant's brief filed in opposition to the government's motion for a stay of dismissal in the District Court, and reproduced in part here (appellee's brief p. 6) belies in large part any fault of the government with respect to ineffectiveness of counsel. ". . . The language of the Assistant United States Attorney at the preliminary arraignment, indicating the existence of different languages in the charge of the indictment, did not register with defense counsel at the time. In fact, although the recording of the preliminary arraignment indicates that such statements were made by the Assistant United States Attorney, defense counsel still has no recollection of that event, but accepts as having happened as a result of hearing the recorded proceedings."

18. At the time the indictment was dismissed, all that appears from the record is that some seven pretrial motions had been filed and oral argument had on August 1, 1973. As previously noted all of the motions were equally applicable to both the "old" and "new" indictments (p. 198 *supra*). Due to the similarity in the offense charged, the preparation for Bey's defense would have been the same under either indictment. In any event, even assuming surprise, the proper remedy would have been either a continuance or adjournment, but not dismissal of the indictment. *See* United States v. Somers, 496 F.2d 723 (3d Cir., filed March 27, 1974), (for a discussion of prejudicial variance and continuance in a *trial* setting); and Hunt v. United States, 456 F.2d 582 at 584 (3d Cir. 1972) ("An indictment should not be dismissed unless there has been deliberate or oppressive action by law enforcement officials.").

19. No authorities support this conclusion. Rather, the courts have uniformly held that a defendant has no right to a concurrent sentence. United States v. Kantor, 362 F.2d 178 (7th Cir. 1966), cert. denied 386 U.S. 986, 87 S.Ct. 1298, 18 L.Ed.2d 239; Burwell v. United States, 353 F.2d 88 (5th Cir. 1965); Larios v. Madigan, 299 F.2d 98 (9th Cir. 1962); United States v. Myers, 451 F. 2d 402 (9th Cir. 1972).

In any event, the defendant's own actions, and not those of the government, defeat any

access to certain rehabilitation opportunities, and in various other ways" because he was sentenced on state charges prior to disposition of the instant indictment.

Tested by the established standards, it is readily apparent that Bey was not denied his right to a speedy trial no matter which of the particular time intervals is analyzed.

■ The Supreme Court in United States v. Ewell, 383 U.S. 116, 122, 86 S. Ct. 773, 777, 15 L.Ed.2d 627 (1966), noted that "the applicable statute of limitations . . . is usually considered the primary guarantee against bringing overly stale criminal charges." Thus, this Court has consistently held that no rights under the Sixth Amendment or F.R.Crim.P. 48(b) attach to a pre-indictment, pre-arrest delay. United States v. Dukow, 453 F.2d 1328 (3d Cir. 1972); Hunt v. United States, 456 F.2d 582 (3d Cir. 1972); United States v. Melnick, 458 F.2d 909 (3d Cir. 1972). Therefore, at the very least, Bey was not prejudiced nor denied his right to a speedy trial by reason of the eight month delay between the date (July 3, 1967) when the offense was allegedly committed, and the return of the first indictment (March 7, 1968).

■■ Nor can it be argued that Bey was prejudiced with respect to the three year period between the return of the first indictment (March 7, 1968) and the return of the superseding indictment (March 25, 1971). The superseding indictment was returned well within the applicable statute of limitations and it was on that indictment that defendant was detained and subsequently arraigned. In United States v. Marion, 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971), the Court said:

"It is readily understandable that it is either a formal indictment or information *or* else *the actual restraints imposed by arrest and holding to answer a criminal charge* that engage the particular protections of speedy-trial provision of the Sixth Amendment."

\* \* \* \* \* \*

"Until this event occurs, a citizen suffers no restraints on his liberty and is not the subject of public accusation: his situation does not compare with that of a defendant who has been arrested and held to answer. Passage of time, whether before or after arrest, may impair memories, cause evidence to be lost, deprive the defendant of witnesses, and otherwise interfere with his ability to defend himself. But this possibility of prejudice at trial is not itself sufficient reason to wrench the Sixth Amendment from its proper context. Possible prejudice is inherent in any delay, however short; it may also weaken the Government's case." (emphasis supplied)

Bey was neither arrested nor incarcerated as a result of the original indictment. It was on the basis of the superseding indictment that a federal detainer issued in August 1972. An examination of the record has failed to disclose bad faith, purposeful delay, oppressive action or material prejudice to the defendant on the government's part. Hunt v. United States, *supra*. Rather, it reveals that defendant was apparently a fugitive until July 1972 when he was incarcerated on state charges. A defendant cannot complain of any delay attributable to his

---

possible argument in this connection. On September 21, 1972 Bey's motion for a speedy trial was filed. On October 5, 1972, the District Court granted his motion for a mental examination and on Bey's *request*, continued generally and without date the time for filing of his brief.

Bey was sentenced by the state authorities in January 1973. Two times he refused to submit himself for examination by the Court appointed physician. To this date he has yet to be examined! In July 1973, Bey's counsel asked Dr. Thomas to withhold his further efforts until after the August 1973 hearing (pp. 198–199, *supra*). Hence, not only was trial impossible prior in time to January 1973 when the state sentence was imposed, but by reason of Bey's resistance to examination, and the granting of Bey's own motion for a continuance, Bey was not ready to stand trial by August 1973.

flight or unavailability. United States v. Cartano, 420 F.2d 362, 364 (1st Cir.), cert. denied 397 U.S. 1054, 90 S.Ct. 1398, 25 L.Ed.2d 671 (1970). Accordingly, no prejudice could result with respect to the three year period between the two indictments or even with respect to the one year period between the return of the superseding indictment and defendant's state arrest in July 1972.

 As to the alleged post-arrest delay, a motion for speedy trial made by the defense is not solely dispositive of the issue. Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). A defendant's constitutional right to a speedy trial cannot be established by any inflexible rule but can be determined only by weighing the actions and conduct of the prosecution and that of the defendant. Such factors as the length of and reason for the delay, the defendant's assertion of his right and the prejudice enuring to the defendant must be taken into account. United States v. Varga, 449 F.2d 1280 (3 Cir. 1971).

■ Although Bey did file a motion for a speedy trial, we cannot overlook his failure to submit to mental examination and his own request for a briefing continuance. These actions without more, indicate substantially less than a desire for a speedy trial. Barker v. Wingo, *supra*; *cf.* Mackey v. United States, 122 U.S.App.D.C. 97, 351 F.2d 794 (1965). Where the delay, if any, is attributable to the defendant, as it is here, we will not hear him complain that he has been denied a speedy trial. United States ex rel. Barber v. Commonwealth of Pennsylvania, 429 F.2d 518 (3d Cir. 1970); Murray v. Commonwealth of Pennsylvania, 408 F.2d 498 (3d Cir. 1969).

Having discovered no basis in the record for the Trial Court's finding that "delay could have been avoided by timely action on the part of the government," and being satisfied on the record as a whole that the defendant has not been denied a speedy trial, the order of the District Court dismissing Indictment 71–63 will be reversed, and the case will be remanded for trial, or further proceedings consistent with this opinion.[20]

20. We of course do not rule out the possibility of any informed change of plea.